Theodore W. Chandler (Bar No. 219456)
    <ted.chandler@bakerbotts.com>
BAKER BOTTS L.L.P.
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone:   (213) 202-5702
Facsimile:   (213) 202-5732

Cheryl A. Cauley (Bar No. 252262)
    <cheryl.cauley@bakerbotts.com>
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA  94304-1007
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

[*Additional Counsel on Signature Page*]

Attorneys for Defendants

*Vision Service Plan, A/K/A VSP Global,*
*Visionworks of America, Inc., VSP*
*Ventures Management Services, LLC,*
*Altair Eyewear, Inc., Eyefinity, Inc.,*
*Marchon Eyewear, Inc., Plexus Optix, Inc.,*
*VSP Labs, Inc., and Eyeconic, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| TOTAL VISION, LLC and TOTAL VISION, P.C., <br><br> Plaintiffs, <br><br> v. <br><br> VISION SERVICE PLAN, a/k/a VSP GLOBAL, VISIONWORKS OF AMERICA, INC., VSP VENTURES MANAGEMENT SERVICES, LLC, ALTAIR EYEWEAR, INC., EYEFINITY, INC., MARCHON EYEWEAR, INC., PLEXUS OPTIX, INC., VSP LABS, INC., and EYECONIC, INC., <br><br> Defendants. | Case No.: 8:23-cv-01805-CJC-DFM <br><br> **DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT** <br><br> Date:   Monday, February 5, 2024 <br> Time:   1:30 p.m. <br> Dept:   Courtroom 9B <br> Judge:   Hon. Cormac J. Carney |

# **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT .................................................................... 1

II.   TV SETTLED, RELEASED AND COVENANTED NOT TO BRING THIS
      ACTION. ................................................................................................... 1

      A. The Settlement Agreement Binds Both Plaintiffs. ...................................... 2

      B. TV Cannot Avoid the Settlement Agreement by Arguing the Terms It
         Negotiated are Part of an Antitrust Violation. ............................................ 3

      C. The Release is Not Unconscionable. ......................................................... 4

         1.  The Release is Not Procedurally Unconscionable ................................. 4

         2.  The Release is Not Substantively Unconscionable .............................. 6

III.  TV'S ANTITRUST AND TORT CLAIMS FAIL TO STATE A PLAUSIBLE
      CLAIM. ..................................................................................................... 8

      A. TV Fails to Address the Deficiencies in Its Conclusory Market Power
         Allegations. ............................................................................................... 8

      B. TV Fails to Allege the Fundamental Requirement of All Tying Claims. ..... 9

      C. TV Fails to Plead a Legally Cognizable Refusal to Deal. ........................ 11

      D. TV's Section 2 Claims All Depend on a Mistaken View that VSP Must
         Deal With TV Without Limits or Conditions. ........................................... 13

      E. TV Fails to Address How Its Unfair Competition Law Cause of Action
         States a Plausible Claim. ......................................................................... 15

      F. Plaintiffs' "Intentional Interference" Claim is Time-Barred and
         Insufficiently Plead. ................................................................................. 16

         1.  The Continuing Violation Doctrine Does Not Apply. ......................... 16

         2.  The Interference Claim is Too Vague to State a Claim. ...................... 18

IV.   TV MISREPRESENTS ITS PLEADING OBLIGATIONS IN AN ATTEMPT
      TO SAVE ITS CLAIMS AGAINST THE "OTHER" DEFENDANTS. ....... 19

V.    CONCLUSION .......................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*24 Hour Fitness, Inc. v. Superior Ct.*,
  66 Cal. App. 4th 1199 (1998) ................................................................... 6

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171 (9th Cir. 2016) ................................................................ 10

*Affinity Credit Union v. Apple*,
  No. 4:22-cv-04174-JSW (N.D. Cal. Sept. 27, 2023) .............................. 10

*Ajzenman v. Off. of Comm'r of Baseball*,
  492 F. Supp. 3d 1067 (C.D. Cal. 2020) .................................................. 15

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
  948 F.2d 536 (9th Cir. 1991) .................................................................. 14

*Altitude Sports & Ent., LLC v. Comcast Corp.*,
  No. 19-CV-3253-WJM-MEH, 2020 WL 8255520 (D. Colo. Nov. 25, 2020) ...... 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 18

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
  472 U.S. 585 (1985) ................................................................ 11, 12, 13, 14

*Barber v. Nestle USA, Inc.*,
  154 F. Supp. 3d 954 (C.D. Cal. 2015) .................................................... 16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................. 9

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
  603 F.2d 263 (2d Cir. 1979) ................................................................... 14

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) .................................................... 17

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962) .................................................................................. 9

*Carbajal v. HSBC Bank U.S.A., N.A.*,
  No. CV 16-9297 PSG FFM, 2017 WL 7806587 (C.D. Cal. Sept. 1, 2017) ........... 6

*Carlson v. Home Team Pest Defense, Inc.*,
  239 Cal. App. 4th 619 (2015) ................................................................... 7

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ....................................................................... 15, 16

*cf. Arminak & Assocs., Inc. v. Saint-Gobain Calmar*,
    789 F. Supp. 2d 1201 (C.D. Cal. June 7, 2011) ...................................................... 13

*Cf. Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.*,
    801 F. Supp. 2d 1163 (D.N.M. 2011) .................................................................. 15

*Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs., LLC*,
    748 F. Supp. 2d 1145 (C.D. Cal. 2010) .................................................................. 5

*Chavez v. Whirlpool Corp.*,
    93 Cal. App. 4th 363 (2001) ................................................................................ 15

*Cheske v. Waring*,
    No. CV 10-06363 ODW CTX, 2010 WL 4916611 (C.D. Cal. Nov. 24, 2010) .... 16

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984) ............................................................................................ 19

*D.C. Comics v. Pac. Pictures Corp.*,
    938 F.Supp.2d 941 (C.D. Cal. 2013) .................................................................... 17

*Denham v. Weatherford U.S. L.P.*,
    No. 2:23-cv-04045-RGK-JCx, 2023 WL 8870538 (C.D. Cal. Aug. 3, 2023) ......... 5

*E.W. Stone, LLC v. Shao*, No. 11cv1652 DMS (WVG),
    2011 WL 5914282 (S.D. Cal. Nov. 28, 2011) ...................................................... 17

*Everhealth Found., Inc. v. Dep't of Health Servs.*,
    168 Cal. App. 3d 708 (1985) ................................................................................. 3

*Fitz v. NCR Corp.*,
    118 Cal. App. 4th 702 (2004) ................................................................................ 7

*FTC v. Facebook, Inc.*,
    560 F. Supp. 3d 1 (D.D.C. 2021) ........................................................................... 9

*FTC v. Qualcomm, Inc.*,
    969 F.3d 974 (9th Cir. 2020) ................................................................. 12, 13, 14

*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*,
    998 F.2d 391 (7th Cir. 1993) ............................................................................... 15

*Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*,
    No. 5:12–CV–06209–EJD, 2013 WL 3974537 (N.D. Cal. July 31, 2013) ............ 6

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ............................................................................... 9

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
    847 F.3d 1221 (10th Cir. 2017) ........................................................................... 20

*N. Oil Co. v. Standard Oil Co.*,
    761 F.2d 699 (Temp. Emer. Ct. App.1985) ........................................................... 4

*Nelson v. Dual Diagnostics Treatment Center, Inc.*,
    77 Cal. App. 5th 643 (2022)....................................................................................7

*Nesbitt Fruit Prods., Inc. v. Del Monte Beverage Co.*,
    177 Cal. App. 2d 353 (1960)...................................................................................5

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
    967 F. Supp. 2d 1347 (N.D. Cal. 2013) .............................................................8, 9

*Osborn v. Sinclair Refin. Co.*,
    324 F.2d 566 (4th Cir. 1963) .................................................................................12

*OTO, L.L.C. v. Kho*,
    8 Cal. 5th 111 (2019)...............................................................................................4

*Pinnacle Museum Tower Ass'n. v. Pinnacle Mkt. Dev. (US), LLC*,
    55 Cal. 4th 223 (2012)..........................................................................................5, 6

*QS Holdco Inc. v. Bank of Am. Corp.*,
    No. 18-CV-824(RJS), 2019 WL 3716443 (S.D.N.Y. Aug. 6, 2019)......................4

*RealPage Inc. v. Yardi Systems, Inc.*,
    852 F. Supp. 2d 1215 (C.D. Cal. 2012) ............................................................9, 10

*Redel's Inc. v. Gen. Elec. Co.*,
    498 F.2d 95 (5th Cir. 1974) .....................................................................................4

*Santa Fe Properties LP v. Source Bioscience, Inc.*,
    No. CV 20-10727-JFW(PVCx), 2021 WL 6104156 (C.D. Cal. Feb. 10, 2021) ..16,
    18

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009).....................................................................................2

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
    801 F.3d 412 (4th Cir. 2015) .................................................................................19

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
    983 F. Supp. 1303 (N.D. Cal. 1997) .....................................................................18

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
    521 F. Supp. 3d 929 (S.D. Cal. 2021) ...................................................................18

*Szetela v. Discover Bank*,
    97 Cal. App. 4th 1094 (2002)...................................................................................5

*Taxin v. Food Fair Stores, Inc.*,
    287 F.2d 448 (3d Cir. 1961).....................................................................................4

*Tyntec Inc. v. Syniverse Techs., LLC*,
    No. 8:17-CV-591-T-26MAP, 2017 WL 2733763 (M.D. Fla. June 26, 2017).......12

*Unigestion Holding, S.A. v. UPM Technology, Inc.*,
    305 F. Supp. 3d 1134 (D. Or. 2018).......................................................................20

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko LLP,*
  540 U.S. 398 (2004) ........................................................................ 11, 13

*VKK Corp. v. Nat'l Football League,*
  244 F.3d 114 (2d Cir. 2001) .................................................................. 4

*Vollrath Co. v. Sammi Corp.,*
  9 F.3d 1455 (9th Cir. 1993) ................................................................. 20

*William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.,*
  668 F.2d 1014 (9th Cir. 1981) ............................................................. 13

**OTHER AUTHORITIES**

*Black's Law Dictionary* (10th ed. 2014) .................................................... 2

*Merriam-Webster's Collegiate Dictionary* (11th ed. 2003) ......................... 2

**STATUTES**

Cal. Code Civ. Proc. § 339(1) ................................................................. 16

Cal. Corp. Code § 150 .............................................................................. 3

Cal. Corp. Code § 160(a) .......................................................................... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT

The Court should dismiss this case with prejudice and enforce TV's[1] agreement to end its relationship with VSP on September 23, 2023 peacefully and without litigation. TV does not dispute the parties' settlement agreement or that it entered into it with knowledge of the facts on which it now bases the Complaint. But it sued anyway. TV's claims are as flawed as its efforts to avoid that settlement agreement. It mistakenly treats VSP like a public utility, compelled to do business with it (or any of its future potential owners) indefinitely and only on TV's preferred terms. Those claims find no support under antitrust or other law and ignore the fundamental principle that people and businesses are free to decide with whom they do business and on what terms.

### II.    TV SETTLED, RELEASED AND COVENANTED NOT TO BRING THIS ACTION.

As demonstrated in Defendants' opening brief, TV chose to settle its disputes arising from VSP's decision to end their brief contractual relationship. Defs. Br. 1-7, ECF No. 14; *see also* Compl. ¶¶ 79-86, 88-89, 96, ECF No. 1; 2020 Agreement § 7.10, ECF No. 14-1 at Ex. 2. The settlement allowed TV to remain in the VSP provider network on agreed terms for an additional three-year transitional period, and TV agreed to leave the network peacefully on September 29, 2023 without further threat of litigation. 2020 Agreement §§ 7.1, 7.10.1. Because the settlement enabled TV to benefit for three years before the promised separation, the parties agreed to several mutual releases, covenants, and other protections to assure VSP received the peace it bargained for. *See e.g., id.* § 7.10. TV chose to accept the benefits of that settlement for the full three years with knowledge of all the operative facts now alleged in its Complaint when it surrendered its right to litigate. *See* Defs.

---

[1] "TV" collectively refers to Plaintiffs Total Vision, LLC ("LLC") and Total Vision, P.C. ("PC"). "VSP" refers to Defendant Vision Service Plan.

1   Br. 5-6. TV's Opposition does not contest this. Opp'n 1-5, 15-21, ECF No. 25.

2   Nevertheless, TV makes three arguments to evade its settlement obligations: (A) the

3   agreement binds only LLC, (B) the settlement is part of an antitrust "scheme," or

4   (C) it is otherwise unconscionable. *Id.* 15-20. Because there is no merit to any of

5   these arguments, the Court should dismiss the Complaint with prejudice.

6   **A. The Settlement Agreement Binds Both Plaintiffs.**

7   LLC signed the settlement agreement for itself, its parent company, and its

8   "affiliated entities." Defs. Br. 6-7. TV concedes the release and covenants apply to

9   LLC, its affiliates and LLC's parent company, Interco, but argues that PC is not

10  bound because the particular ophthalmologist who owns PC "has no ownership or

11  control of LLC," and PC and LLC are "related by nothing more than an arms-length

12  agreement." Opp'n 15-16.

13  The settlement agreement precludes such shell games. Regardless of how TV

14  chose to structure its internal affairs, the Complaint confirms that LLC, PC, and

15  Interco are under the common direct and indirect control of the participating

16  optometrists, making them all affiliates. Defs. Br. 1-2, 6-7. Whether or not LLC and

17  PC own or control one another is irrelevant—as the Complaint confirms, they are

18  each part of the TV corporate family and indispensable parts of TV's business

19  model. Compl. ¶¶ 2-3, 30, 81, 140.

20  The settlement agreement defines an "Affiliate" as "an entity controlled by,

21  controlling or under common control of [VSP] or [LLC] . . . ." 2020 Agreement

22  § 1.1. This accords with the ordinary meaning of "affiliate" as "[a] corporation that

23  is related to another corporation by shareholdings or other means of control." *See*

24  Affiliate, *Black's Law Dictionary* (10th ed. 2014); Affiliate, *Merriam-Webster's*

25  *Collegiate Dictionary* (11th ed. 2003); *see also Satterfield v. Simon & Schuster,*

26  *Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) ("The plain and ordinary meaning of

27  'affiliate' supports this definition as 'a company effectively controlled by another or

28  associated with others under common ownership or control.'" (citations omitted)).

California law defines an affiliate as one that "directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with the other specified corporation." Cal. Corp. Code § 150. "'[C]ontrol' means the direct or indirect possession 'of the power to direct or cause the direction of the management and policies of a corporation.'" Cal. Corp. Code § 160(a). "[C]ontrol exists even where one entity merely has potential rather than actual influence over another." *Everhealth Found., Inc. v. Dep't of Health Servs.*, 168 Cal. App. 3d 708, 715 (1985).

The Complaint, TV's Corporate Disclosure (ECF No. 3), and the settlement agreement all demonstrate that PC, LLC, and Interco are affiliates because they are under the common direct or indirect ownership and control of the optometrists whose practices they acquired. TV (or Interco) formed PC with an *ophthalmologist* owner to circumvent a California law limiting the number of locations that can be owned by an *optometrist*. *See* Compl. ¶ 31. When TV buys an optometry practice, the optometrist contributes the clinical business to PC, and the nonclinical business to LLC. *Id.* ¶ 2. In exchange, the optometrist receives ownership in LLC's parent, Interco, and becomes an officer who "operate[s] and control[s]" PC. *Id.* ¶¶ 2, 3, 30 (alleging that PC is "controlled by optometrist leaders"), 31-33, 140. Under this imaginative structure, LLC, PC, and Interco all are affiliate entities because the people who operate and control PC also are owners of LLC's parent company.[2]

### B. TV Cannot Avoid the Settlement Agreement by Arguing the Terms It Negotiated are Part of an Antitrust Violation.

Next, TV relies on the obscure "part and parcel" doctrine to negate its settlement obligations. Opp'n 16-18. The doctrine's obscurity is no accident—it has

---

[2] Without LLC (or Interco), it is inconceivable how PC would have standing to remain as the sole plaintiff. PC does not itself compete for or purchase other optometry practices, and has no right to buy or sell eyeglasses, contact lenses, or other materials. And PC's optometrists, having sold their practices, were only eligible to participate in VSP's provider network via the now-expired settlement agreement with LLC.

3

1   rarely been applied. *See VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 125 (2d
2   Cir. 2001) (noting that the doctrine is "[r]arely discussed and more rarely applied,"
3   and finding that no court of appeals had ever applied it to invalidate a release). Its
4   very existence is in "grave doubt." *See id.* at 126 (citing *Taxin v. Food Fair Stores,*
5   *Inc.*, 287 F.2d 448, 451 (3d Cir. 1961)).

6        If it exists, the doctrine does not apply unless "the release itself was an
7   integral part of a scheme to violate the antitrust laws." *Redel's Inc. v. Gen. Elec.*
8   *Co.*, 498 F.2d 95, 100-01 (5th Cir. 1974). Only where the release is the cause of the
9   alleged violation can it be considered "part and parcel" thereof. *See N. Oil Co. v.*
10  *Standard Oil Co.*, 761 F.2d 699, 706 (Temp. Emer. Ct. App.1985); *see also VKK*
11  *Corp.*, 244 F.3d at 124-25 (rejecting the doctrine's application to a contractual
12  release where plaintiff could have asserted an antitrust claim without regard to
13  release); *QS Holdco Inc. v. Bank of Am. Corp.*, No. 18-CV-824(RJS), 2019 WL
14  3716443, at *4-5 (S.D.N.Y. Aug. 6, 2019) (same).

15       The part and parcel doctrine cannot help TV because its antitrust claims all
16  depend on VSP's alleged abuse of market power, which allegedly flowed from the
17  popularity of VSP's insurance. *See generally* Compl. The doctrine does not apply
18  because, if TV's allegations had merit, TV could have asserted them in 2020, as it
19  had threatened to do, instead of settling. Were it otherwise, the obscure doctrine—so
20  rarely applied—would negate almost every effort to settle antitrust claims.

21                **C. The Release is Not Unconscionable.**

22       TV's' final argument to evade its settlement—that the release is
23  unconscionable—is equally unavailing. To be unconscionable, an agreement must
24  be both procedurally and substantively unconscionable. *OTO, L.L.C. v. Kho*, 8 Cal.
25  5th 111, 125 (2019). The release is neither.

26            **1. The Release is Not Procedurally Unconscionable.**

27       Procedural unconscionability exists when a "weaker party is presented the

28

1  clause and told to 'take it or leave it' without the opportunity for meaningful

2  negotiation . . . ." *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002). It

3  requires either "oppression or surprise." *Pinnacle Museum Tower Ass'n. v. Pinnacle*

4  *Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012). "Oppression occurs where a

5  contract involves lack of negotiation and meaningful choice" while surprise occurs

6  when "the allegedly unconscionable provision is hidden within a prolix printed

7  form." *Id.* at 247 (citation omitted). Oppression and duress are closely related. *See,*

8  *e.g., Denham v. Weatherford U.S. L.P.*, No. 2:23-cv-04045-RGK-JCx, 2023 WL

9  8870538, at *4 (C.D. Cal. Aug. 3, 2023) ("[T]o find procedural unconscionability,

10  other elements, or 'sharp factors,' such as lying, manipulating, or placing under

11  duress, must exist alongside adhesion." (citations omitted)). Where a party could

12  have sued to enforce its rights instead of agreeing to settle, it cannot then argue that

13  it contracted under duress. *See, e.g.*, *Nesbitt Fruit Prods., Inc. v. Del Monte*

14  *Beverage Co.*, 177 Cal. App. 2d 353, 358-60 (1960) (declining to find duress where

15  plaintiff could have sought an injunction or declaratory judgment rather than

16  entering into an unfavorable compromise agreement). *See also Chase Inv. Servs.*

17  *Corp. v. Law Offices of Jon Divens & Assocs., LLC*, 748 F. Supp. 2d 1145, 1170

18  n.24 (C.D. Cal. 2010) (declining to find duress because the complaining party

19  "could have pursued legal remedies . . . to protect its rights . . . ." (citing *Nesbitt* and

20  others)).

21     TV's own allegations negate procedural unconscionability. There was no

22  surprise: TV admits VSP gave notice that it would not renew the 2019 agreement

23  more than 3 months before its expiration date. Compl. ¶ 83. Nor were the mutual

24  release and covenant not to sue inconspicuous or buried in the 2020 Agreement;

25  they were specific points of negotiation. Compl. ¶¶ 96, 104, 110.

26     Nor do TV's allegations show oppression or duress. Settlement negotiations

27  began well before the 2019 agreement expired and continued for months thereafter.

28  *See id.* ¶¶ 83-89, 96 (noting that 2020 Agreement was signed "[a]fter multiple

rounds of discussion."). And while TV complains that VSP eventually removed its doctors from the provider network in July 2020 after months of negotiations, settlement talks continued until the parties reached agreement in late September 2020. *Id.* Both parties compromised: VSP proposed a 1-year extension with 15 additional TV practices to join its network but ended up agreeing to a three-year extension with up to 70 new in-network practices. *Id.* ¶¶ 86, 96-97. In the end, TV chose the settlement it negotiated over litigating its antitrust claims. *Id.* ¶¶ 83-89, 96, 104-105, 110.

Neither was TV a weakling powerless to negotiate—TV was a sophisticated business with enough money to purchase at least 59 optometry practices and hire counsel, first to threaten VSP and then negotiate the 2020 settlement. *See id.* ¶¶ 33, 84-86, 88, 96; 2020 Agreement § 7.10.2. Litigation was always an option if TV had not preferred the settlement terms, which it accepted *for the full three-year term.* Based on TV's own allegations, the release is not procedurally unconscionable.

### 2. The Release is Not Substantively Unconscionable.

TV rests its substantive unconscionability argument on the multiple reinforcing *mutual* clauses that assured the peaceful end to their relationship for which VSP bargained. Tellingly, TV suggests no other effective means for securing that promise.

"A contract term is not substantively unconscionable when it merely gives one side a greater benefit." *Pinnacle*, 55 Cal. 4th at 246. "[R]ather, the term must be 'so one-sided as to "shock the conscience."'" *Id.* (quoting *24 Hour Fitness, Inc. v. Superior Ct.*, 66 Cal. App. 4th 1199, 1213 (1998)). A *mutual* release is not the kind of provision that is substantively unconscionable. *See, e.g.*, *Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*, No. 5:12–CV–06209–EJD, 2013 WL 3974537, at *4-6 (N.D. Cal. July 31, 2013) (on motion to dismiss, court held mutual termination provisions were not unconscionable); *Carbajal v. HSBC Bank U.S.A., N.A.*, No. CV 16-9297 PSG FFM, 2017 WL 7806587 (C.D. Cal. Sept. 1, 2017)

6

(dismissing complaint where plaintiff had failed to sufficiently plead facts showing contractual provision was procedurally or substantively unconscionable).

TV's caselaw does not help its cause. *Nelson v. Dual Diagnostics Treatment Center, Inc.* involved a one-sided release with "no corresponding limitation or waiver" going the other direction. 77 Cal. App. 5th 643, 663 (2022). Likewise, in *Carlson v. Home Team Pest Defense, Inc.*, the agreement required *only the employee* to arbitrate any claims against her employer. 239 Cal. App. 4th 619, 634 (2015). And in *Fitz v. NCR Corp.*, the court merely recognized that an agreement may be unconscionable if it imposes different forum limitations on the parties. 118 Cal. App. 4th 702 at 713, 724 (2004).

Unlike the cases TV cited, the challenged terms of the 2020 agreement were added to assure a peaceful separation after three years and are mutual. The release applies to both parties and their affiliates. *See* 2020 Agreement § 7.10.1 ("The Parties . . . release *one another* . . . from any and all causes of action and claims for relief, known or unknown, . . . ." (emphasis added)). The "Retained Claims" includes "any breach of this Agreement" *for either side. Id.* The covenant not to sue is mutual. *Id.* § 7.10.2 ("[N]either Party will . . . commence any proceeding against the other Party . . . ."). The fee shifting clause is mutual: "[s]hould *either Party* commence any action against the other Party that breaches this section 7.10 . . . the Party that breached this section 7.10 shall pay all legal fees and costs incurred by the other Party in the action." *Id.* § 7.10.4 (emphasis added). And likewise, the quarter million-dollar damage cap applies equally to both parties. *Id.* § 7.10.5.

None of these provisions, considered separately or together, are the type of one-sided "shock the conscience" provisions that would render a settlement agreement negotiated between sophisticated businesses unconscionable, especially after the complaining party accepted all of its benefits first.

### III.   TV'S ANTITRUST AND TORT CLAIMS FAIL TO STATE A PLAUSIBLE CLAIM.

As discussed in Defendants' Brief, TV's antitrust and tort claims independently fail to state a claim as well.

### A. TV Fails to Address the Deficiencies in Its Conclusory Market Power Allegations.

TV does not dispute that its wide-ranging tying and monopolization claims each require sufficient allegations of market power in the putative vision insurance market, or that it must offer "evidentiary facts" to plead such power. *See* Defs. Br. 11-12. Rather than address the merits of VSP's arguments, TV doubles-down on obfuscation, arguing that its "well-pleaded allegations [show] that VSP possesses monopoly power in California[.]" Opp'n 8. The paragraphs of the Complaint TV cites to—Paragraphs 44, 48 and 52—do no such thing. Paragraph 44 cites allegations from an unrelated matter *in 1996*; those 30-year-old allegations are immaterial to VSP's alleged market power today. Compl. ¶ 44. Paragraph 48's allegations are focused on a separate geographic market ("VSP's share of patients with vision insurance ***nationally***"), and Paragraph 52 merely alleges that "VSP alone accounted for ***over 50%*** of TV's revenue." *Id.* ¶¶ 48, 52. Notably, there are *no facts* alleged to extrapolate TV's experience across all of California. Thus, whether considered individually or together, these allegations do not provide any evidentiary facts to support TV's conclusory claims of VSP's monopoly power in the alleged California market.

TV's own authorities betray the factual insufficiency of its Complaint. The court in *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 967 F. Supp. 2d 1347 (N.D. Cal. 2013) did not "infer" local market power based solely on national market shares, as TV suggests. *See* Opp'n 9. Instead, the court explained: "Plaintiff has alleged that Defendants have market power generally in the United States, *and has alleged sufficient facts from which the Court can plausibly infer [defendant] has*

*market power within each of these smaller markets*." *Orchard Supply*, 967 F. Supp. 2d at 1363 (emphasis added). In other words, the plaintiff in *Orchard Supply* supplied the evidentiary facts that are entirely lacking here.[3]

Courts routinely grant 12(b)(6) motions to dismiss antitrust claims where, as here, plaintiffs fail to allege sufficient facts to support conclusory assertions of market power. *See* Defs. Br. 11-13; *see also FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 18 (D.D.C. 2021) (citing cases). As the *Facebook* court explained: "The Court's [dismissal] decision here does not rest on some pleading technicality or arcane feature of antitrust law. Rather, the existence of market power is at the heart of any monopolization claim." 560 F. Supp. 3d at 20. The same result is compelled here: without adequate allegations of market power, TV's federal and state antitrust claims fail as a matter of law.

### B. TV Fails to Allege the Fundamental Requirement of All Tying Claims.

Defendants demonstrated that TV's "tying" claims fail for the most basic of reasons—it failed to allege the tied sales of two separate products. Defs. Br. 7-9. In response, TV cites *RealPage Inc. v. Yardi Systems, Inc.*, 852 F. Supp. 2d 1215, 1222-223 (C.D. Cal. 2012), for the undisputed proposition that a tying arrangement involves sales of "products or services sold in separately defined product markets." Opp'n 11 (quoting *RealPage*, 852 F. Supp. 2d at 1222-223). But *RealPage* does not support, as TV suggests, those sales of separate products could be made to *entirely different purchasers* (*e.g.*, consumer purchasers of vision insurance vs. optometrist purchasers of eye frames). To the contrary, *RealPage* includes an extensive recitation of binding authorities that make it abundantly clear, as VSP argued, that to

---

[3] TV's reliance on *Brown Shoe Co. v. United States*, 370 U.S. 294, 346 (1962) (Opp'n 8) is equally misplaced. *Brown Shoe* involved a merger challenge under the Clayton Act, and says nothing about TV's pleading obligations to satisfy *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008).

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

state a tying claim under both the Sherman Act and the Cartwright Act requires allegations of "an agreement by a party *to sell* one product but only on the condition that *the* [same] *buyer* also purchase a different (or tied) product . . . ." *RealPage*, 852 F. Supp. 2d at 1222 (emphasis added) (citations omitted).[4] Contrary to TV's argument (Opp'n 11-12), recognition of this core principle is not limited to "inapposite" or out of circuit authorities. *See, e.g.*, *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016) (no tie because there were no conditions "linking the sale of a tying product with the sale of the tied product."); *see also Affinity Credit Union v. Apple*, No. 4:22-cv-04174-JSW, slip op. at 10 (N.D. Cal. Sept. 27, 2023) (dismissing tying claim involving Apply Pay "because consumers do not actually purchase Apple Pay . . . ." and explaining "there cannot be a tie where there is no . . . *sale*" and "*Aerotec* is directly on point.") (emphasis in original).

At bottom, TV complains that it would like to participate in VSP's network because of its popularity with subscribers, but without abiding by VSP's network participation rules. As Defendants' cited authorities made clear, and which TV does not even attempt to rebut, in the health insurer-provider context, in-network participation is not a "tying product" and the requirements for network participation that allow providers *to sell* their services to the insurer are not conditioned or tied purchases. *See* Defs. Br. 8-9.

Finally, TV's last-ditch argument that VSP's position as a purchaser of optometry services from providers depends on the definition of the relevant market that is inappropriate on a motion to dismiss (*see* Opp'n 12), is itself a red herring. To dismiss TV's tying claims, VSP does not proffer or rely upon alternative market

---

[4] In light of the numerous Supreme Court and Ninth Circuit cases establishing the requisite legal elements of a Sherman Act tying claim, TV's reliance on a commentator's critique of the underlying economic rationale of tying (*see* Opp'n 11) does not warrant a separate response.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT
No. 8:23-cv-01805-CJC-DFM

definitions but instead relies upon TV's own allegations. Opp'n 12. TV's alleged tying market ("access" to VSP's network) and alleged source of "tying" power are clear: *i.e.*, TV's claimed need to serve (sell to) VSP's subscribers and to be paid by ("ability to bill") VSP on an "in-network" basis. Compl. ¶ 6; *see also id*. ¶¶ 40, 69-70. TV alleges no sale of a tying product.

### C. TV Fails to Plead a Legally Cognizable Refusal to Deal.

In direct contravention of the Supreme Court's holding in *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko LLP*, 540 U.S. 398 (2004), TV asks this court to expand the narrow *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 591 (1985) exception to a business's unilateral right to choose with whom it will deal and on what terms it does business. Opp'n 6-7. To achieve this goal, TV would have this court ignore the Supreme Court's admonition that "*Aspen Skiing* is at or near the outer boundary of § 2 liability," *Trinko*, 540 U.S. at 408, and treat VSP's separate relationships with formerly independent optometrists, as one and the same as VSP's short-lived interactions with TV—a different entity with a different business model. *Id.* 6. TV argues that "VSP terminated a decades-long course of dealing" with "TV *practices*" and that "VSP's dealings with TV's *providers* go back decades." *Id.* 6-7 (emphases added). But that, of course, is not the same as VSP's dealing with TV. As TV acknowledges: VSP and TV's relationship began in 2019 and lasted only a few months before VSP notified TV that the 2019 Agreement would not be renewed, Compl. ¶¶ 56, 83; and VSP expressed wariness of doing business with roll-up entities like TV. *Id.* ¶¶ 76, 81.

Perhaps to distract from its pleading deficiencies, TV addresses an argument VSP did not make. Nowhere did Defendants "assert[] that agreements of a fixed duration cannot give rise to refusal-to-deal liability." Opp'n 6 (citing Defs. Br. 10). Rather, Defendants maintain that the 2020 Agreement cannot serve to demonstrate a voluntary long-standing course of dealing—because that agreement, on its face, was specifically designed from the outset *to end* the parties' short-lived relationship. *See*

11

1   Defs. Br. 10; *see also* 2020 Agreement § 7.10.1. At most, VSP and TV dealt with

2   one another for a few months under the 2019 Agreement before VSP gave notice

3   that it wished to end the relationship, leaving the parties to work out the 2020

4   settlement to achieve an amicable final separation. Compl. ¶¶ 56, 83. TV's efforts to

5   analogize the arrangement in *Aspen Skiing* as "just like" the 2020 Agreement here

6   finds no support in the Complaint or in the 2020 Agreement itself. *See Aspen Skiing*

7   *Co.*, 472 U.S. at 591 (addressing joint arrangement that lasted for *almost fifteen*

8   *years*). TV attempts to sidestep this central fact by redirecting this court to the

9   seasonal nature of the arrangement in *Aspen Skiing* rather than its longstanding

10  history. Opp'n 6. And, tellingly, TV neglects entirely to address the Supreme

11  Court's holding in *Trinko*, which described *Aspen Skiing* as "at or near the outer

12  boundary of §2 liability." 540 U.S. at 408.

13       Notably, in direct contrast to VSP and TV's short-lived relationship, which

14  had an end date negotiated up-front, TV relies upon cases that involved business

15  relationships that spanned from *ten to twenty years*. *See* Opp'n 6-7; *Altitude Sports*

16  *& Ent., LLC v. Comcast Corp.*, No. 19-CV-3253-WJM-MEH, 2020 WL 8255520, at

17  *10 (D. Colo. Nov. 25, 2020) (plaintiff alleged that the parties had "a profitable

18  prior course of dealing . . . for *at least 15 years*." (emphasis added)); *Tyntec Inc. v.*

19  *Syniverse Techs., LLC*, No. 8:17-CV-591-T-26MAP, 2017 WL 2733763, at *5

20  (M.D. Fla. June 26, 2017) (plaintiff alleged a "*thirteen-year* course of dealing

21  between Syniverse and Tyntec's predecessors," pursuant to an agreement assigned

22  to Tyntec that the parties had elected to continue (emphasis added)); *Osborn v.*

23  *Sinclair Refin. Co.*, 324 F.2d 566, 569 (4th Cir. 1963) (pre-*Aspen Skiing* case,

24  addressing contractual relationships that lasted for *twenty years*).

25       Finally, TV's reliance on the Ninth Circuit's decision in *FTC v. Qualcomm,*

26  *Inc.*, 969 F.3d 974 (9th Cir. 2020) (*see* Opp'n 6), is puzzling, at best. There, the

27  Court *rejected* the FTC's refusal to deal claim because, among other reasons,

28  Qualcomm had no longstanding prior practice of licensing its rivals that it suddenly

changed upon gaining monopoly power. *Qualcomm*, 969 F. 3d at 994. Here, TV alleges that, within months, VSP advised TV of its wariness to deal with private-equity roll-up models. Compl. ¶¶ 76, 81. These cases serve only to further highlight that TV does not state a plausible claim consistent with the narrow confines of *Aspen Skiing*. TV's efforts to expand that narrow holding should not be countenanced. *See Trinko*, 540 U.S. at 408; *Qualcomm*, 969 F.3d at 997 ("we are not persuaded . . . that we should adopt an additional exception, beyond the *Aspen Skiing* exception . . . .").

### D. TV's Section 2 Claims All Depend on a Mistaken View that VSP Must Deal With TV Without Limits or Conditions.

Defendants previously addressed the list of alleged predatory conduct on which TV relies. *Compare generally* Compl. ¶¶ 55-144 (listing "VSP's Anticompetitive Acts") *with* Defs. Br. 7-11, 13-16. Nevertheless, in its Opposition, TV complains that "rather than addressing these allegations holistically, as required by law, VSP improperly responds to select allegations in isolation." Opp'n 9. The cases TV cites to support its monopoly broth theory are inapposite; courts must still analyze plaintiffs' alleged anticompetitive conduct within well-recognized frameworks. *See, e.g.*, *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1039 (9th Cir. 1981) (analyzing elements of predatory pricing claim including plaintiffs' proffered evidence of unlawful intent); *cf. Arminak & Assocs., Inc. v. Saint-Gobain Calmar*, 789 F. Supp. 2d 1201, 1206-1212 (C.D. Cal. June 7, 2011) (Carney, J.) (analyzing separately each category of challenged conduct proffered by plaintiff as supporting alleged unlawful scheme).

Viewing the Complaint "holistically," as TV argues the court must, TV complains that VSP refused to deal sight with potential purchasers of TV (*i.e.*, insisting upon a "change in control" provision) or to deal on the unlimited terms that TV would prefer (*i.e.*, limiting the number of new TV practices or locations treated as "in-network."). These challenged contractual provisions are just that—a

13

safeguard of VSP's right to choose with whom it will do business. *See* Defs. Br. 13-15.[5] And, as TV acknowledges, these terms that allegedly limited in-network growth were part of an agreement intended to wind-down TV's reliance on and end the relationship with VSP. Compl. ¶¶ 96-102; *see also* 2020 Agreement § 7.10.1.  In an attempt to escape this reality, TV contends that it has somehow alleged a Section 2 claim because of its conclusory allegation that "VSP insisted on these terms to strengthen its hold over the vision insurance market and purchase TV at a below-market price." Opp'n 10 (citing Compl. ¶¶ 128-132). But TV's argument that it can force terms of dealing was flatly rejected by the *Qualcomm* court.

In *Qualcomm*, the Ninth Circuit rejected similar arguments that a defendant's conduct, which did not meet the *Aspen Skiing* refusal to deal exception, "satisfie[d] traditional Section 2 standards [in that] it 'tends to impair opportunities of rivals and . . . does not further competition on the merits.'" 969 F.3d at 995 (all but first alteration in original) (citations omitted). The court specifically refused to "adopt an additional exception [to a party's freedom to deal], beyond the *Aspen Skiing* exception," and reaffirmed the "general rule that 'businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing.'" *Id*. at 996-97 (citations omitted). [6]

---

[5] TV's complaints over VSP's nascent entry into California's retail optometry market fails to state a claim for the reasons set forth in Defendants' Brief. Defs. Br. 15. Notably, TV does not allege (and cannot allege) that VSP attempted to monopolize the asserted California independent optometry market. *See Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 547, 549 (9th Cir. 1991) (rejecting *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979)'s "monopoly leveraging doctrine as an independent theory of liability under Section 2" and holding that only "[i]f there is a *dangerous probability* that a monopoly will be created by leveraging conduct [in the second market], then the conduct will be reached under the doctrine of attempted monopoly." (emphasis added)).

[6] In yet another twist on its "duty to deal" theory, TV complains that VSP "removed TV providers from its 'Premier' banner," consistent with VSP's wariness of TV's

**E.  TV Fails to Address How Its Unfair Competition Law Cause of Action States a Plausible Claim.**

TV does not dispute that its UCL claims advanced under the "unlawful" prong of the UCL rise and fall with the other claims in the Complaint. *See* Opp'n 12. Because TV fails to state a claim for both its antitrust claims and its tortious interference claim, it has not "adequately alleged the underlying violation of law," and therefore its "unlawful" prong UCL claims also fail. *See Ajzenman v. Off. of Comm'r of Baseball*, 492 F. Supp. 3d 1067, 1080 (C.D. Cal. 2020).

As to the "unfair" prong of the UCL, TV completely ignores Defendants' argument that when alleged conduct is explicitly reasonable, condoned, or permitted under antitrust law—as is the conduct alleged here—it cannot be "unfair" under the UCL. Defs. Br. 17; *see also Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) ("[C]onduct alleged to be 'unfair'… is not 'unfair' if the conduct is deemed reasonable and condoned under the antitrust laws."). Because TV makes no attempt to address this argument, it has conceded this point.

Instead of addressing that key argument, TV only recites the *Cel-Tech* test. Opp'n 12-13. TV's myopic focus on *Cel-Tech* is misplaced, however, given the safe harbor for the reasonable, condoned, and/or permitted conduct alleged in the Complaint. For this reason, *Epic Games, Inc. v. Apple, Inc.* is irrelevant here. 67

---

roll-up business model. Opp'n 9. In other contexts, courts are clear that a plaintiff does not have an antitrust claim simply because another refuses to promote its products or services. *Cf. Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.*, 801 F. Supp. 2d 1163, 1195-96 (D.N.M. 2011) (dismissing antitrust claim where plaintiff remained able to compete despite failing to comply with a private group's standards) (quoting *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 397 (7th Cir. 1993) (finding there was "no evidence of an anticompetitive effect because the certification at issue, although influential, was not required to compete in the market.")). Nowhere has TV alleged any facts that its practices could not compete without VSP's "Premier" endorsement.

F.4th 946, 1001 (9th Cir. 2023) (acknowledging the safe-harbor doctrine under the UCL for permitted conduct). "[C]ourts may not override [the legislature's] determination" and "simply impose their own notions of the day as to what is fair or unfair." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999); *see also Barber v. Nestle USA, Inc.*, 154 F. Supp. 3d 954, 961 (C.D. Cal. 2015) (Carney, J.) ("[S]afe harbors exist both if the Legislature has 'permitted certain conduct' *and* if it has 'considered a situation and concluded that no action should lie." (citations omitted)).

Even if the *Cel-Tech* test *did* apply here, TV's claims are still plainly insufficient. The fact that TV did not use the word "tethered" in its claims is not the problem—far from merely being a semantic issue, TV has failed to provide any specific allegations about how Defendants' alleged conduct is tied to a legislatively declared policy, is an incipient antitrust violation or harms competition under the *Cel-Tech* test. Without these specific allegations, TV's UCL claim must fail.

### F. Plaintiffs' "Intentional Interference" Claim is Time-Barred and Insufficiently Plead.

TV's tortious interference claims are barred by the two-year statute of limitations and, in any event, are too vague to state a claim. Opp'n 18 (citing *Cheske v. Waring*, No. CV 10-06363 ODW CTX, 2010 WL 4916611, at * 2 (C.D. Cal. Nov. 24, 2010) (citing Cal. Code Civ. Proc. § 339(1))). TV does not deny the alleged conduct occurred more than two years before it sued (and that it threatened litigation prior to entering into the settlement agreement). Def's Br. 5-6, 18. Instead, it claims the violations are "continuing" and that *Santa Fe Properties LP v. Source Bioscience, Inc.*, No. CV 20-10727-JFW(PVCx), 2021 WL 6104156 (C.D. Cal. Feb. 10, 2021) allows its vague allegations. Opp'n at 14. It is wrong on both counts.

### 1. The Continuing Violation Doctrine Does Not Apply.

To avoid the time bar, TV invokes the continuing violations doctrine. Opp'n 14. It claims VSP interfered by "capping TV's growth," which allegedly interfered

16

with 41 potential purchases under consideration before the 2020 settlement. *Id.* The settlement agreement (which only limited how many future-acquired practices TV could add to VSP's network) was signed on September 29, 2020 (Compl. ¶¶ 96), a full three years before TV brought this action. Nevertheless, TV argues that otherwise time-barred interference is "sufficiently linked" to alleged tortious conduct in 2022 and 2023. Opp'n 14 (citing *E.W. Stone, LLC v. Shao,* No. 11cv1652 DMS (WVG), 2011 WL 5914282, at *4 (S.D. Cal. Nov. 28, 2011)). TV does not explain what that link is here, except to declare that the conduct was all "part of the same monopolistic scheme." Opp'n 14. TV's reliance on *E.W. Stone*, a decision devoid of analysis on that issue, is unavailing.

The continuing violations doctrine does not suspend a statute of limitations just because an alleged act "continues." Rather, it applies to wrongful conduct that becomes apparent to the plaintiff "only through the accumulation of a series of harms." *Brodsky v. Apple Inc*., 445 F. Supp. 3d 110, 137-38, (N.D. Cal. 2020). When the plaintiff's injury involves a series of harms that are not immediately apparent to the plaintiff, no single one of which can be identified as the cause of significant harm (as in *E.W. Stone, LLC*), a court may apply the doctrine to toll the statute of limitations. *Id*. But when the alleged wrongdoing involves a discrete act that is actionable on its own, the cause of action accrues when the plaintiff becomes aware of that act. *Id.* at 137-38 (doctrine did not apply and complaint dismissed as time-barred where Apple users became aware of the problem connected to two-factor authentication process the first time they tried to log on); s*ee also D.C. Comics v. Pac. Pictures Corp*., 938 F.Supp.2d 941, 950 (C.D. Cal. 2013) (doctrine did not apply where entry into agreement was a "discrete act for which DC could have filed suit.").

TV became aware of its alleged injury not through the *accumulation* of a series of harms, but through a discrete act that occurred well-outside of the limitations period. Here, TV states that VSP interfered by "capping TV's growth."

17

Opp'n 14. This supposed wrongdoing allegedly prevented the acquisition of certain optometry practices and was fully apparent to TV in September 2020 when it signed the settlement agreement that imposed the alleged "growth cap." Compl. ¶¶ 85-87, 92-97. The 2020 Agreement was a discrete act. By TV's own account, all of the elements of its intentional interference claim were known a full three years before TV brought this action. Therefore, the continuing violations doctrine does not apply, and this claim is time-barred.

### 2. The Interference Claim is Too Vague to State a Claim.

As demonstrated in Defendants' Brief, TV was required to allege facts, beyond mere speculation, of interference with a prospective relationship. *See* Defs. Br. 18-19; *see also Silicon Knights, Inc. v. Crystal Dynamics, Inc*., 983 F. Supp. 1303, 1312 (N.D. Cal. 1997); *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 963 (S.D. Cal. 2021). Reciting the elements of a claim and conclusory statements are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

TV's conclusory allegations do not meet these standards. TV alleged no actual economic relationships with any of the 41 practices it mentions, nor any reason to expect future benefits. It alleged no facts showing conduct wrongful by any legal measure. And its allegations negate any possible harm because it concedes it never even approached the 70 practice "growth cap" about which it complains. *See* Defs. Br. 18-19.

TV also misstates VSP's reliance on *Santa Fe Properties* as requiring it to name each of the 41 practices on which it based its claim. Opp'n 14. VSP cited *Santa Fe Properties* for the proposition that an intentional interference claim requires "'an existing relationship with an identifiable' client or customer." Defs. Br. 19 (quoting *Santa Fe Props.*, 2021 WL 6104156, at *3). If it were enough to allege communications with unidentified business prospects and the defendant's knowledge of those communications, without more, as TV has done, every

complaint would pass scrutiny so long as the plaintiff said that the defendant "knows about this"—that is not the law.

## IV. TV MISREPRESENTS ITS PLEADING OBLIGATIONS IN AN ATTEMPT TO SAVE ITS CLAIMS AGAINST THE "OTHER" DEFENDANTS.

Defendants demonstrated that TV's Complaint skirts the fundamental requirements of Federal Rule of Civil Procedure 8(a) by lumping all of the defendants together without particularized factual allegations of wrongdoing by the VSP affiliates. Defs. Br. 19-20. Specifically, the complaint is devoid of any specific allegations of anticompetitive or tortious conduct with respect to Visionworks, Altair, Marchon, Eyefinity, Plexus, VSPOne, and Eyeconic. As to VSP Ventures, TV alleges in conclusory fashion simply that "VSP Ventures' acquisition of independent practices helps facilitate VSP's alleged dominance in the vision insurance market." Opp'n 15. In other words, the only connection between VSP's affiliates with TV's claims is its corporate relationship to VSP. But guilt by association is not enough to support a claim; Rule 8(a) requires far more than that before subjecting defendants to time-consuming and costly litigation. *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 423 (4th Cir. 2015) ("Antitrust law doesn't recognize guilt by mere association, imputing corporate liability to any affiliate company unlucky enough to be a bystander to its sister company's alleged misdeeds.").

Conceding the deficiencies in its Complaint, TV argues that VSP's affiliates can be liable as a single entity under *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), and that it need only allege "coordinated action." Opp'n 15. TV's reliance on *Copperweld* is misplaced. *Copperweld* held that a parent company cannot conspire with its wholly-owned subsidiaries for the purposes of Section 1 of the Sherman Act. 467 U.S. at 771. It does not stand for a general proposition that an entire corporate organization and corporate formalities can be

abrogated without allegations (or evidence) justifying the result, and it did not negate Rule 8(a)'s pleading requirement applicable to each named defendant. *Id.*

The other cases cited in TV's response (Opp'n 14), *Unigestion Holding, S.A. v. UPM Technology, Inc.*, 305 F. Supp. 3d 1134 (D. Or. 2018), and *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455 (9th Cir. 1993), do not announce a rule contrary to Rule 8(a), and do not stand for the proposition that a plaintiff can assert an antitrust claim solely based on a defendant's place in the corporate family. In fact, unlike TV, the *Unigestion* and *Vollrath* plaintiffs did not rely on the mere association between the defendant companies, but alleged specific participation by each corporate defendant in the alleged schemes. *See Unigestion*, 305 F. Supp. 3d at 1146; *Vollrath*, 9 F.3d at 1463. And the *Unigestion* court cited *Lenox MacLaren Surgical Corp. v. Medtronic, Inc., id.* at 1145-46,which specifically recognized that because a corporation cannot "be held liable under § 2 for the anticompetitive conduct of one or more related entities, merely by virtue of its place in the same corporate family," a plaintiff is "required to come forward with evidence that each defendant independently participated in the enterprise's scheme, to justify holding that defendant liable as part of the enterprise." 847 F.3d 1221, 1237 (10th Cir. 2017).

Here, TV fails to allege any specific wrongdoing by any of VSP's eight separate affiliates; it describes only their relationship with VSP and conclusory statements about how they might benefit from VSP's actions. *See* Opp'n 15 (citing Compl. ¶¶ 4, 13, 38, 53, 60-66). This is nothing more than a claim of guilt by association, and the VSP affiliate defendants must be dismissed.

## V.    CONCLUSION

For the reasons stated above, TV's Complaint must be dismissed. Because no amount of amending can overcome the defects of TV's pleading, the Court should dismiss the Complaint with prejudice.

Dated:  January 22, 2024

By: /s/  *Laura A. Brenner*
Scott W. Hansen (*Pro Hac Vice*)
   <shansen@reinhartlaw.com>
Laura A. Brenner (*Pro Hac Vice*)
   <lbrenner@reinhartlaw.com>
Olivia J. Schwartz (*Pro Hac Vice*)
   <oschwartz@reinhartlaw.com>
REINHART BOERNER VAN DEUREN s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI  53202
Telephone:      (414) 298-8383
Facsimile:      (414) 298-8097

Theodore W. Chandler (Bar No. 219456)
   <ted.chandler@bakerbotts.com>
BAKER BOTTS L.L.P.
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone:      (213) 202-5702
Facsimile:      (213) 202-5732

Cheryl A. Cauley (Bar No. 252262)
   <cheryl.cauley@bakerbotts.com>
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
Telephone:      (650) 739-7500
Facsimile:      (650) 739-7699

James G. Kress (*Pro Hac Vice*)
   <james.kress@bakerbotts.com>
Paul C. Cuomo (*Pro Hac Vice Forthcoming*)
   <paul.cuomo@bakerbotts.com>
Jana I. Seidl (*Pro Hac Vice*)
   <jana.seidl@bakerbotts.com>
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, DC 20001
Telephone:      (202) 639-7700
Facsimile:      (202) 639-7890

*Attorneys for Defendants Vision Service Plan, A/K/A VSP Global, Visionworks of America, Inc., VSP Ventures Management Services, LLC, Altair Eyewear, Inc., Eyefinity, Inc., Marchon Eyewear, Inc., Plexus Optix, Inc., VSP Labs, Inc., and Eyeconic, Inc.*

21

1

### **CERTIFICATE OF COMPLIANCE**

2          The undersigned, counsel of record for Defendants, certifies that this brief

3   contains 6829 words (as determined by the Microsoft Word word-processing system

4   used to prepare the brief, excluding parts of the brief exempted by L.R. 11-6.1),

5   which complies with the word limit of 7,000 words in L.R. 11-6.1.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
COMPLAINT
No. 8:23-cv-01805-CJC-DFM