Theodore W. Chandler (Bar No. 219456)
    <ted.chandler@bakerbotts.com>
BAKER BOTTS L.L.P.
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone:   (213) 202-5702
Facsimile:   (213) 202-5732

Cheryl A. Cauley (Bar No. 252262)
    <cheryl.cauley@bakerbotts.com>
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA  94304-1007
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

[*Additional Counsel on Signature Page*]

Attorneys for Defendants

*Vision Service Plan, A/K/A VSP Global,*
*VSP Ventures Management Services, LLC,*
*Altair Eyewear, Inc., Eyefinity, Inc.,*
*Marchon Eyewear, Inc., and VSP Labs, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| TOTAL VISION, LLC, et al, | Case No.: 8:23-cv-01805-CJC-DFM |
| Plaintiffs, | **DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT AND AFFIRMATIVE DEFENSES AND VSP'S COUNTERCLAIMS** |
| v. | |
| VISION SERVICE PLAN, a/k/a VSP GLOBAL, et al., | |
| Defendants. | |
| VISION SERVICE PLAN a/k/a VSP GLOBAL, | |
| Counterclaimant, | |
| v. | |
| TOTAL VISION, LLC, et al., | |
| Counterclaim Defendants. | |

For its Answer to the Complaint of Plaintiffs Total Vision LLC and Total Vision, P.C. (collectively, "Total Vision" or "Plaintiffs") and Counterclaim, Defendants Vision Service Plan a/k/a VSP Global ("VSP"), VSP Ventures Management Services, LLC ("VSP Ventures"), Altair Eyewear, Inc. ("Altair"), Eyefinity, Inc. ("Eyefinity"), Marchon Eyewear, Inc. ("Marchon"), and VSP Labs, Inc. d/b/a VSPOne ("VSPOne") (collectively, "Defendants"[1]), responds as follows.

Unless expressly admitted herein, Defendants deny the allegations set forth in the Complaint.  Moreover, Defendants expressly deny that they engaged in any of the alleged wrongdoing described in the Complaint, and any statement in the Complaint which suggests that they did is false and is expressly denied.  Plaintiffs also included throughout their Complaint unnumbered section "titles," which are not reproduced here and do not require a response; to the extent the sections headings require a response, Defendants deny them and any and all allegations of unlawful conduct contained therein.  Material cited in footnotes throughout Plaintiffs' Complaint are documents that speak for themselves and therefore require no response. To the extent a response is required, unless expressly otherwise addressed, they are denied.

1.    Defendants admit that VSP operates a vision insurance business, that certain VSP affiliates participate in optometry services and the sale of frames, lenses, and practice management software.  Defendants deny the remaining allegations in Paragraph 1.

2.    Defendants admit that Total Vision has acquired formerly independent optometry practices, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2, and on that basis deny them.

---

[1] Former Defendants Visionworks of America, Inc., Plexus Optix, Inc., and Eyeconic, Inc. were dismissed by the Court's Order dated February 20, 2024, (ECF No. 35), and are therefore omitted here.

3.      Defendants deny that independent optometry practices are "distinct" from "corporate" optometry practices as alleged, and lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 3, and on that basis deny them.

4.      Defendants admit that VSP Ventures has bid on optometry practices that became Total Vision practices.  Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations that Total Vision practices compete with Visionworks, and on that basis deny them. Defendants deny the remaining allegations in Paragraph 4.

5.      Defendants admit that VSP and Total Vision entered into an agreement to do business in 2019.  Defendants admit that prior to 2019, some doctors that later became affiliated with Total Vision had previously entered into Network Doctor Agreements, allowing them to provide in-network services to patients covered by VSP insurance. Defendants admit that Total Vision, P.C. was obligated to comply with the terms of agreements between the parties, and deny the remaining allegations in Paragraph 5.

6.      Defendants deny the allegations in Paragraph 6.

7.      Defendants deny the allegations in Paragraph 7.

8.      Defendants admit that, given its corporate structure, Total Vision was not eligible to remain on the Premier program, but deny the remaining allegations in Paragraph 8.

9.      Defendants deny the allegations in Paragraph 9.

10.      Defendants admit that the parties entered into a new agreement (the "2020 Agreement") in September 2020, but deny the remaining allegations in Paragraph 10.

11.      Defendants deny the allegations in Paragraph 11.

12.      Defendants admit that it reminded Total Vision of the 2020 Agreement expiration date and that the agreement would expire as written. Defendants deny the

remaining allegations in Paragraph 12.

13.    Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation that one optometrist in Total Vision's network indicated that it would have sold to VSP Ventures rather than Total Vision if it had known that Total Vision would not be in VSP's network, and on that basis deny it. Defendants deny the remaining allegations in Paragraph 13.

14.    Defendants deny the allegations in Paragraph 14.

15.    Defendants admit that Total Vision brought this action and that it seeks injunctive relief and damages as a result.  Defendants deny the remaining allegations in Paragraph 15.

16.    Defendants admit that Total Vision, LLC is a Delaware limited liability company. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16, and on that basis deny them.

17.    Defendants admit that Total Vision, P.C. is a California professional corporation. Defendants lack knowledge and information sufficient to form a belief as to the truth as to the remaining allegations in Paragraph 17, and on that basis deny them.

18.    Defendants admit the allegations in Paragraph 18.

19.    Defendants admit that Visionworks is a Texas corporation with a principal place of business in San Antonio, TX, but deny that it is a direct subsidiary of VSP, and state that it is an affiliated entity of VSP. Defendants deny the remaining allegations in Paragraph 19; Visionworks has been dismissed as a defendant in this action.

20.    Defendants admit that VSP Ventures Management Services LLC is a Delaware limited liability corporation with its principal place of business in Rancho Cordova, California, but deny that it is a direct subsidiary of VSP, and state that it is an affiliated entity to VSP. Defendants deny the remaining allegations in Paragraph

20.

21.     Defendants admit that Altair is a California corporation with its principal place of business in Rancho Cordova, California, but deny that it is a direct subsidiary of VSP, and state that it is an affiliated entity to VSP. Defendants deny the remaining allegations in Paragraph 21.

22.     Defendants admits that Marchon is a New York corporation with its principal place of business in Melville, New York, but deny that it is a direct subsidiary of VSP, and state that it is an affiliated entity to VSP. Defendants deny the remaining allegations in Paragraph 22.

23.     Defendants admit that Eyefinity is a Delaware corporation with its principal place of business in Rancho Cordova, California, but deny that it is a direct subsidiary of VSP, and state that it is an affiliated entity to VSP. Defendants deny the remaining allegations in Paragraph 23.

24.     Defendants admit that Plexus is a Delaware corporation with its principal place of business in Rancho Cordova, California, but deny that it is a direct subsidiary of VSP, and state that it is an affiliated entity to VSP. Defendants deny the remaining allegations in Paragraph 24; Plexus has been dismissed as a defendant in this action.

25.     Defendants admit that VSP Labs, Inc. is a Delaware corporation, admit that its principal place of business is Rancho Cordova, California, but deny that it is a direct subsidiary of VSP, and state that it is an affiliated entity of VSP and that "VSPOne" is a portion of a d/b/a it uses in its business. Defendants deny the remaining allegations in Paragraph 25.

26.     Defendants admit that Eyeconic's principal place of business is Rancho Cordova, California, but deny that it is a direct subsidiary of VSP, and state that it is a Delaware corporation and is an affiliated entity to VSP. Defendants deny the remaining allegations in Paragraph 26; Eyeconic has been dismissed as a defendant in this action.

27.    Defendants admit that Total Vision has requested injunctive relief and damages in the Complaint but deny that it is entitled to relief or damages. Defendants deny the remaining allegations in Paragraph 27.

28.    Defendants admit the allegations in Paragraph 28.

29.    Defendants admit that the Court has personal jurisdiction and that venue is proper with regard to the Defendants that remain in the case, and deny the remaining allegations in Paragraph 29.

30.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30, and on that basis deny them.

31.    Defendants admit that the number of locations a single optometry practice owned by one or more optometrists can have is limited under California law, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 31, and on that basis deny them.

32.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 32, and on that basis deny them.

33.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 33, and on that basis deny them.

34.    Defendants admit that VSP was founded as a non-for-profit vision benefits and service company, admits that it does not have a tax exempt status in accordance with court decisions in 2005, and deny the remaining allegations in Paragraph 34.

35.    Defendants admit that VSP has been a vision care insurer for many decades, admits that it offers services through its benefits line of business, VSP Vision Care. Defendants deny the remaining allegations in Paragraph 35.

36.    Defendants admit that VSP or its affiliated entities have entered into businesses related to vision care, including those involving eyewear, lenses, practice

management software, optical labs, and retail optometry. Defendants admit that Defendant Altair was launched in 1992 and that an entity affiliated with VSP acquired Marchon in 2008. Defendants admit that Altair and Marchon licenses the rights to and sells eyewear under well-known brands such as Calvin Klein, Cole Haan, Nautica, Nike, and Ferragamo, among others.  Defendants deny the remaining allegations in Paragraph 36.

37.    Defendants admit that an affiliated entity to VSP owns the Unity lenses brand, and state that the VSP Optics website refers to Unity Lenses as "[t]he Fastest Growing Lens Brand In The Industry", and that an entity affiliated with VSP launched its initial phase of Eyeconic.com, an online optical retailer that sells prescription eyewear and sunglasses, in addition to contact lenses, in 2011. Defendants deny the remaining allegations in Paragraph 37.

38.    Defendants admit that Eyefinity provides practice management software to optometrists, that VSP Labs, Inc. operates optical laboratories, and that Eyefinity is an affiliated entity of VSP.  Defendants further admit that an entity affiliated with VSP acquired Visionworks in 2019, and that Visionworks operates over 700 optometry locations across more than 40 states. Defendants admit that VSP Ventures acquires independent optometry practices as part of its business. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation that VSP Ventures and Total Vision have more recently gone "head-to-head" in bidding for independent optometry practices, and on that basis deny it. Defendants deny the remaining allegations in Paragraph 38.

39.    Defendants admit that over the years, VSP-affiliated entities have expanded their businesses into vision care related products and services.  Defendants admit that an October 27, 2014 "Opinion" article in the Optometry Times referred to several companies with the partial phrase "control of the entire chain of vision care production."  Defendants deny the remaining allegations in Paragraph 39.

40.    Defendants admit that VSP is a large vision insurer in California, and

7

that practices that are not in VSP's network may be reimbursed at out-of-network rates rather than in-network rates for services or products provided to VSP insureds. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations concerning the alleged "market shares" referred and as to Total Vision's alleged revenue or the revenue of "most other independently owned optometry practices in California" in Paragraph 40, and on that basis deny them. Defendants deny the remaining allegations in Paragraph 40.

41.    Defendants deny that VSP has a monopoly or market power over all vision insurance. Defendants deny that VSP is the nation's "most dominant" vision insurer. Defendants lack knowledge and information sufficient to form a belief as to the allegation concerning what the Department of Justice's Antitrust Division may have "noted" as early as the 1990s, and on that basis deny it.  Defendants state that in 1994, the DOJ filed a Complaint against Vision Service Plan pertaining to clauses called Most Favored Nations clauses, and that prior to any trial or adjudication on any issue of fact or law in the matter, the parties entered into a consent judgment in 1996, which has since expired. Defendants deny the remaining allegations in Paragraph 41.

42.    Defendants admit that in 1994, the DOJ filed a Complaint against Vision Service Plan pertaining to clauses commonly referred to as most favored nations clauses, and that prior to any trial or adjudication on any issue of fact or law in the matter, the parties entered into a consent judgment in 1996, which has since expired. Defendants state that the final judgment in that matter states that it is a consent judgment, and that it shall not be considered as evidence against or an admission by any party about any issue of fact or law or that any violation of law occurred. Defendants deny that ¶ 11 of the Complaint is properly quoted, including because it omitted and changed words. Defendants deny the remaining allegations in Paragraph 42.

43.    Defendants deny the allegations in Paragraph 43, and state that the

1  Plaintiffs' characterization of the 1996 Competitive Impact Statement is inaccurate,

2  the document speaks for itself, and therefore no response is required.

3    44.    Defendants deny the allegations in Paragraph 44.  Plaintiffs'

4  characterization of the 1996 Competitive Impact Statement is inaccurate, the

5  document speaks for itself, and therefore no response is required.

6    45.    Defendants lack knowledge and information sufficient to form a belief

7  as to the truth of the allegations concerning the percentages related to Total Vision

8  optometry practices in 2020, and on that basis deny them. Defendants deny the

9  remaining allegations in Paragraph 45.

10    46.    Defendants lack knowledge and information sufficient to form a belief

11  as to the truth of the allegations in Paragraph 46 concerning the percentage of

12  EyeMed accounts at Total Vision and the allegations concerning Total Vision's

13  alleged market research and discussions, and on that basis deny them.  Defendants

14  also lack knowledge and information concerning the reasons that Total Vision may

15  lack profitability and growth, and on that basis deny any such allegations.

16  Defendants deny the remaining allegations in Paragraph 46.

17    47.    Defendants admit that many employers in California, including those

18  identified in Paragraph 47, have used VSP as their vision insurance provider.

19  Defendants deny the remaining allegations in Paragraph 47.

20    48.    Defendants admit that VSP has approximately 82 million "members"

21  nationwide, but lack knowledge and information concerning the percentages

22  identified by Total Vision in Paragraph 48, and on that basis deny those allegations.

23  Defendants deny that VSP has monopoly power. Defendants deny the remaining

24  allegations in Paragraph 48.

25    49.    Defendants lack knowledge and information sufficient to form a belief

26  as to the truth of the allegations that all "corporate optometry practices" are used by

27  retail stores as "loss leaders," and on that basis deny them. Defendants deny the

28  remaining allegations in Paragraph 49.

50.     Defendants deny the allegations in Paragraph 50.

51.     Defendants admit that James Comer, Chairman, Committee on Oversight and Accountability sent a letter dated August 8, 2023, to FTC Chair Lina Khan citing alleged information about VSP and others in publications such as ValuePenguin and Mark Farrah Associates, and asked to schedule a briefing. Defendants deny that VSP's alleged "power" poses any threat to healthy competition. Defendants deny the remaining allegations in Paragraph 51 including the accuracy of statements contained in the letter.

52.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations concerning Total Vision's revenue in the first quarter of 2023 and the revenue of other independent optometry practices in California, and on that basis deny them.  Defendants deny the remaining allegations in Paragraph 52.

53.     Defendants admit that since VSP Ventures launched in 2019, it has acquired at least 84 independent optometry practices throughout the entire United States.  Defendants lack knowledge and information sufficient to form a belief concerning whether one optometrist who sold their practice to Total Vision indicated that they would have instead sold their practice "to VSP" had they known that Total Vision would no longer be on VSP's network, and on that basis deny them. Defendants deny the remaining allegations in Paragraph 53.

54.     Defendants deny the allegations in Paragraph 54.

55.     Defendants admit that in 2018, Total Vision provided responses to VSP's standard questionnaire concerning an application to be on VSP's network, and admit that in 2018, Total Vision personnel and VSP began discussions concerning an agreement for Total Vision practices to be on VSP's network. Defendants deny that VSP's provision of insurance is essential to doing business. Defendants lack knowledge and information concerning the alleged assurances in 2018 that unidentified independent optometrist could join Total Vision's network,

and on that basis deny those allegations.  Defendants lack information and knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 55, and on that basis deny them.

56.    Defendants admit that they entered into the 2019 Retail Agreement with effective date May 22, 2019, which provided for terms for the business arrangement between Total Vision and VSP, and that the 2019 Retail Agreement addressed, among other things, payment and claim transmission. Defendants admit that the 2019 Retail Agreement contained a one-year term that would continue for successive one-year terms unless either party gave notice of nonrenewal. The agreement also allowed individual doctors who had been members of the VSP doctor network to remain within that network while the 2019 Agreement remained in effect and those doctors remained affiliated with Total Vision. Defendants deny that it had a decades-long relationship with Total Vision. Defendants deny the remaining allegations in Paragraph 56.

57.    Defendants admit that the 2019 Retail Agreement preserved VSP's discretion concerning admission of new doctors into its doctor network, deny refusing admission to any new doctor proposed by Total Vision, state that the 2019 Retail Agreement speaks for itself and deny the allegations concerning its terms that are contrary to the actual agreement. Defendants deny the remaining allegations in Paragraph 57.

58.    Defendants deny that any of the provisions of the 2019 Retail Agreement were "anticompetitive," state that the 2019 Retail Agreement speaks for itself and deny the allegations concerning its terms that are contrary to the actual agreement. Defendants deny the remaining allegations in Paragraph 58.

59.    Defendants state that the provisions of the 2019 Retail Agreement speak for themselves and deny any allegations concerning its terms that are contrary to the actual agreement. Defendants deny the remaining allegations in Paragraph 59.

60.     Defendants deny making defendants agree to the quoted terms, deny that the quoted terms harmed Total Vision and deny artificially lowering reimbursement rates as alleged. Defendants state that the provisions of the 2019 Retail Agreement speak for themselves and deny any allegations concerning its terms that are contrary to the actual agreement.  Defendants deny the remaining allegations in Paragraph 60.

61.     Defendants deny the allegations in Paragraph 61.

62.     Defendants state that Total Vision agreed to use commercially reasonable efforts to purchase agreed amounts of Unity lenses, state the provisions of the 2019 Retail Agreement speak for themselves, and deny any allegations concerning its terms that are contrary to the actual agreement.  Defendants deny the remaining allegations in Paragraph 62.

63.     Defendants deny the allegations in Paragraph 63.

64.     Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations concerning the unidentified "older" versions of Unity lenses, and the need to "redo" patient's eyeglasses, and on that basis deny them. Defendants deny the remaining allegations contained in Paragraph 64.

65.     Defendants state that the provisions of the 2019 Retail Agreement speak for themselves and deny any allegations concerning its terms that are contrary to the actual agreement.  Defendants deny the remaining allegations in Paragraph 65.

66.     Defendants state that the provisions of the 2019 Retail Agreement speak for themselves and deny any allegations concerning its terms that are contrary to the actual agreement.  Defendants deny the remaining allegations in Paragraph 66.

67.     Defendants state that the provisions of the 2019 Retail Agreement speak for themselves and deny any allegations concerning its terms that are contrary to the actual agreement.  Defendants deny the remaining allegations in Paragraph

1    67.

2         68.    Defendants deny the allegations in Paragraph 68.

3         69.    Defendants deny the allegations in Paragraph 69.

4         70.    Defendants deny the allegations in Paragraph 70.

5         71.    Defendants deny the allegations in Paragraph 71.

6         72.    Defendants deny the first sentence of paragraph 72. Regarding the

7    second sentence, defendants admit opening two Eyeconic stores in the Chicago area,

8    which later closed. Defendants admit being interested in retailing. Defendants deny

9    the remaining allegations in paragraph 72.

10        73.    Defendants admit that VSP Ventures was launched in or around March

11   2019 and its business involves acquisition of former independent optometry

12   practices, which means that it possibly could compete with Total Vision or other

13   entities who also wish to acquire the same practices from time to time.  Defendants

14   admit that VSP Ventures has acquired at least twelve practices since 2019, and that

15   in a few instances a doctor may have offered their practice for sale to both Total

16   Vision and Ventures.  Defendants admit optometrists who sell practices to VSP

17   Ventures become employees of a professional corporation and do not become co-

18   owners of VSP Ventures, which cannot offer equity enhancements like Total Vision.

19   Defendants admit that VSP Ventures' business differs from Total Vision's model.

20   Defendants deny the remaining allegations in Paragraph 73.

21        74.    Defendants lack knowledge and information sufficient to form a belief

22   as to the truth of the allegation that one doctor expressed that he or she would have

23   sold their practice to VSP Ventures rather than Total Vision had he or she known

24   that Total Vision would no longer be on VSP's network, and on that basis deny it.

25   Defendants deny the remaining allegations in Paragraph 74.

26        75.    Defendants admit that James Comer, Chairman, Committee on

27   Oversight and Accountability sent a letter dated August 8, 2023, to FTC Chair Lina

28   Khan citing alleged information about VSP and others in publications such as

13

ValuePenguin and Mark Farrah Associates, and asked to schedule a briefing. Defendants state that the sentences quoted are taken out of context and, as such, untrue, and that, as a vision insurance provider, it is not in VSP's interest to inflate vision care expenses. Defendants deny the remaining allegations in Paragraph 75.

76.    Defendants admit that VSP has explained that it does not seek to expand its business with practices controlled by private equity or similar business models as part of its assessment of the scope of its provider network and retail strategy and provided information to doctors concerning a hold effective April 15, 2019, on any new network arrangements with private equity or similar backed groups.  Defendants deny the remaining allegations in Paragraph 76.

77.    Defendants admit that an entity affiliated with VSP acquired Visionworks in 2019, and that Visionworks operates over 700 optometry locations across more than 40 states. Defendants admit that at the time of the acquisition, Visionworks was the sixth largest optical chain in the United States. Defendants admit that the Visionworks acquisition was announced and discussed in optometry publications. Defendants deny the remaining allegations in Paragraph 77.

78.    Defendants lack knowledge and information sufficient to form a belief as to the allegation that Visionworks was the seventh largest optical retailer in the United States, and on that basis deny it. Defendants admit that in 2021 Visionworks had approximately 716 locations across the United States and that it had over 1 billion in annual gross sales total at that time, but state it had no locations in California at that time. Defendants deny that Visionworks (or VSP) currently owns 50 California practices. Defendants lack knowledge and information sufficient to form a belief as to whether 29 practices owned by a VSP affiliated company are "now" within 20 miles of a Total Vision practice, and on that basis deny those allegations. Defendants deny the remaining allegations in Paragraph 78.

79.    Defendants admit that VSP informed Total Vision (and other similar retail groups) that it would no longer be in the Premier program in November 2019

14

1    in accordance with its rights under the 2019 Agreement. Defendants deny that it

2    made any "threat." Defendants deny any further allegations in Paragraph 79.

3         80.    Defendants admit that practices in the Premier program are tagged with

4    a Premier banner. Defendants lack knowledge and information sufficient to form a

5    belief about whether patients who search for in-network providers are more likely to

6    actually frequent practices with Premier status, and on that basis deny the allegation.

7    Defendants admit that some practices used the Premier program before joining Total

8    Vision, and admit that some of the phrases in Paragraph 80 appear to be partial

9    quotes from a prior version of the VSP Vision website. Defendants admit that Total

10   Vision practices (like other similar private-equity backed retail groups) were no

11   longer eligible to participate in the Premier program in 2020. Defendants deny the

12   remaining allegations in Paragraph 80.

13        81.    Defendants deny the allegations in Paragraph 81.

14        82.    Defendants admit that VSP communicated to Total Vision that Total

15   Vision could not remain in the Premier program so long as it was a private equity

16   owned or backed entity. Defendants deny the remaining allegations in Paragraph 82.

17        83.    Defendants admit that VSP provided Total Vision with a notice of non-

18   renewal of the 2019 Retail Agreement and state that the letter speaks for itself.

19   Defendants deny the remaining allegations in Paragraph 83.

20        84.    Defendants admit that VSP and Total Vision negotiated about a new

21   agreement in the spring of 2020, and admit that one of the things discussed was a

22   limit to additional practices that Total Vision could add to VSP's network (as

23   opposed to Total Vision's overall growth). Defendants deny the remaining

24   allegations in Paragraph 84.

25        85.    Defendants admit that representatives of VSP and Total Vision

26   continued negotiations concerning potential terms of an agreement, including in

27   April and May of 2020. Defendants admit that VSP sent a meeting invite that

28   included a list of "Next Step Discussion Points," which included "Capping Location

Growth," which referred to the addition of practices onto the VSP provider network.
Defendants admit that there was another conference call between the parties on May
15, 2020, and that during negotiations, VSP offered to allow Total Vision to add
another fifteen practices onto the VSP Network, which Total Vision rejected.
Defendants deny the remaining allegations in Paragraph 85.

86.    Defendants admit that on or about June 11, 2020, VSP made an offer to
renew the agreement with Total Vision on terms that included, among other things,
the addition of 15 more Total Vision practices to the VSP Network and a one-year
renewal term.  Defendants admit that during June and/or July 2020, representatives
of Total Vision or their attorneys accused VSP of antitrust violations.  Defendants
deny the remaining allegations in Paragraph 86.

87.    Defendants admit that representatives of VSP and Total Vision and
Bregal Investments and Total Vision's outside counsel had a conference call on
August 4, 2020.  Defendants admit there were discussions by Ms. Fields and others
concerning, among other things, possible agreement terms that would cap the total
number of new Total Vision practices that would be added to the VSP network.
Defendants deny the remaining allegations in Paragraph 87.

88.    Defendants admit that after the August 4, 2020, conference call, Total
Vision provided a revised draft of a Retail Agreement to VSP, and state that the
parties thereafter exchanged in further email communications after that. Defendants
admit that after the parties had reached an impasse in negotiations and the 2019
Retail Agreement and all extensions had expired, VSP advised Total Vision that, in
accordance with the terms of that Agreement, the Total Vision practices would be
removed from VSP's provider network.  Defendants deny the remaining allegations
in Paragraph 88.

89.    Defendants admit that, after months of negotiations that resulted in an
impasse, and in accordance with the 2019 Retail Agreement, VSP informed the
Total Vision representatives that Total Vision doctors would no longer be on the

16

1    VSP provider network, and sent notices to those doctors on August 10, 2020.

2    Defendants deny the remaining allegations in Paragraph 89.

3        90.    Defendants lack knowledge and information sufficient to form a belief

4    as to the truth of the allegations that Total Vision providers found alternative

5    coverage and arrangements for patients, and therefore deny them.  Defendants deny

6    the remaining allegations in Paragraph 90.

7        91.    Defendants lack knowledge and information sufficient to form a belief

8    as to the truth of the allegations concerning the alleged reactions of patients during

9    August and September of 2020, or what Total Vision required them to pay, and

10   therefore deny them.  Defendants deny the remaining allegations in Paragraph 91.

11       92.    Defendants lack knowledge and information sufficient to form a belief

12   as to the truth of the allegations concerning whether at the time of the termination in

13   2020 Total Vision was negotiating agreement 41 practices and whether there were

14   letters of intent or non-disclosure agreements, and therefore deny them.  Defendants

15   deny the remaining allegations in Paragraph 92.

16       93.    Defendants deny the allegations in Paragraph 93.

17       94.    Defendants deny the allegations in Paragraph 94.

18       95.    Defendants deny the allegations in Paragraph 95.

19       96.    Defendants admit that Total Vision and VSP continued negotiating

20   throughout August and September of 2020, culminating in the 2020 Agreement.

21   Defendants deny the remaining allegations in Paragraph 96.

22       97.    Defendants state that the 2020 Agreement speaks for itself and deny the

23   allegations concerning its terms that are contrary to the actual agreement.

24   Defendants deny that the 2020 Agreement restricted Total Vision's growth.

25   Defendants deny the remaining allegations in Paragraph 97.

26       98.    Defendants deny that VSP "made" Total Vision agree to anything, state

27   that the 2020 Agreement speaks for itself and deny the allegations concerning its

28   terms that are contrary to the actual agreement. Defendants deny the remaining

1    allegations in Paragraph 98.

2        99.    Defendants deny that VSP "required" Total Vision to enter into the

3    2020 Agreement, state that the 2020 Agreement speaks for itself and deny the

4    allegations concerning its terms that are contrary to the actual agreement.

5    Defendants deny the remaining allegations in Paragraph 99.

6        100.    Defendants admit that Total Vision agreed to the terms in the 2020

7    Agreement, including those concerning use of the Eyefinity practice management

8    and electronic health record solutions, and that Total Vision did not violate those

9    provisions. Defendants state that the 2020 Agreement speaks for itself and deny the

10   allegations concerning its terms that are contrary to the actual agreement.

11   Defendants deny the remaining allegations in Paragraph 100.

12       101.    Defendants admit that Total Vision agreed to the terms in the 2020

13   Agreement, including those concerning participation in VSP's Premier Program and

14   reimbursement rates. Defendants state that the 2020 Agreement speaks for itself and

15   deny the allegations concerning its terms that are contrary to the actual agreement.

16   Defendants deny the remaining allegations in Paragraph 101.

17       102.    Defendants admit that Total Vision agreed to the terms in the 2020

18   Agreement, including a standard "Change of Control" provision. Defendants state

19   that the 2020 Agreement speaks for itself and deny the allegations concerning its

20   terms that are contrary to the actual agreement. Defendants deny the remaining

21   allegations in Paragraph 102.

22       103.    Defendants admit that Total Vision agreed to the terms in the 2020

23   Agreement, including terms concerning Total Vision's agreed exit from the VSP

24   provider network. Defendants state that the 2020 Agreement speaks for itself and

25   deny the allegations concerning its terms that are contrary to the actual agreement.

26   Defendants deny the remaining allegations in Paragraph 103.

27       104.    Defendants admit that Total Vision agreed to the terms in the 2020

28   Agreement, including a mutual release of claims, state that the 2020 Agreement

speaks for itself and deny the allegations concerning its terms that are contrary to the actual agreement. Defendants deny the remaining allegations in Paragraph 104.

105.    Defendants state that the 2020 Agreement speaks for itself and deny the allegations concerning its terms that are contrary to the actual agreement. Defendants deny the remaining allegations in Paragraph 105.

106.    Defendants state that the 2020 Agreement speaks for itself and deny the allegations concerning its terms that are contrary to the actual agreement. Defendants deny the remaining allegations in Paragraph 106.

107.    Defendants state that the 2020 Agreement speaks for itself and deny the allegations concerning its terms that are contrary to the actual agreement. Defendants deny the remaining allegations in Paragraph 107.

108.    Defendants state that the 2020 Agreement speaks for itself and deny the allegations concerning its terms that are contrary to the actual agreement. The allegations in Paragraph 108 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 108.

109.    Defendants state that the 2020 Agreement speaks for itself and deny the allegations concerning its terms that are contrary to the actual agreement. The allegations in Paragraph 109 contain legal conclusions, to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 109.

110.    Defendants admit that Total Vision raised antitrust threats prior to entering into the 2020 Agreement, which included a release of such claims. Defendants state that the 2020 Agreement speaks for itself and deny the allegations concerning its terms that are contrary to the actual agreement. The allegations in Paragraph 110 contain legal conclusions, to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 110.

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM
No. 8:23-cv-01805-CJC-DFM

111.   The allegations in Paragraph 111 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 111.

112.   The allegations in Paragraph 112 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 112.

113.   The allegations in Paragraph 113 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 113.

114.   The allegations in Paragraph 114 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 114.

115.   Defendants deny the allegations in Paragraph 115.

116.   The allegations in Paragraph 116 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 116.

117.   The allegations in Paragraph 117 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 117.

118.   Defendants state that the 2020 Agreement speaks for itself and deny the allegations concerning its terms that are contrary to the actual agreement. The allegations in Paragraph 118 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 118.

119.   Defendants state that the 2020 Agreement speaks for itself and deny the allegations concerning its terms that are contrary to the actual agreement. The allegations in Paragraph 119 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations.

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM
No. 8:23-cv-01805-CJC-DFM

1   Defendants deny the remaining allegations in Paragraph 119.

2       120.  Defendants state that the 2020 Agreement speaks for itself and deny the

3   allegations concerning its terms that are contrary to the actual agreement. The

4   allegations in Paragraph 120 contain legal conclusions to which no response is

5   required. To the extent a response is required, Defendants deny those allegations.

6   Defendants deny the remaining allegations in Paragraph 120.

7       121.  Defendants deny the allegations in Paragraph 121.

8       122.  Defendants lack knowledge and information sufficient to form a belief

9   as to the truth of the allegations concerning the offers Total Vision alleges it

10  received, and on that basis deny them. Defendants deny the remaining allegations in

11  Paragraph 122.

12      123.  Defendants deny the allegations in Paragraph 123.

13      124.  Defendants deny the allegations in Paragraph 124.

14      125.  Defendants deny that Mr. Worrall reached out to Total Vision, LLC in

15  September 2022, admit that he attended calls with Mr. Collier of Total Vision and

16  admit that VSP personnel including Mr. Worrall reminded Total Vision on several

17  occasions that the 2020 Agreement was set to expire in 2023 and that VSP did not

18  plan to renew it. Defendants deny the remaining allegations in Paragraph 125.

19      126.  Defendants lack knowledge and information sufficient to form a belief

20  as to the truth of the allegations concerning the phone call, including which phone

21  call is referred to, and on that basis deny them.  Defendants admit that Mr. Worrall

22  of VSP and Mr. Collier of Total Vision attended some phone calls, including about

23  Total Vision's proposed sale of its business and that the parties could try to get an

24  NDA in place to consider it.  Defendants deny the remaining allegations in

25  Paragraph 126.

26      127.  Defendants lack knowledge and information sufficient to form a belief

27  as to the truth of Paragraph 127, and on that basis deny them.

28      128.  Defendants lack knowledge and information sufficient to form a belief

as to the truth of the allegations concerning whether Total Vision was negotiating in good faith, and on that basis deny them. Defendants deny the remaining allegations in Paragraph 128.

129. Defendants admit that VSP sent a letter dated December 12, 2022, state that the letter speaks for itself and deny the allegations about the terms of the letter that are contrary to the actual letter. Defendants deny the remaining allegations in Paragraph 129.

130. Defendants admit that VSP sent a letter dated December 12, 2022, state that the letter speaks for itself, and deny the allegations about the terms of the letter that are contrary to the actual letter. Defendants deny the remaining allegations in Paragraph 130.

131. Defendants admit that VSP made an offer, state that the letter speaks for itself and deny the allegations about the terms of the letter that are contrary to the actual letter, and lack knowledge and information sufficient to form a belief as to the truth of the allegations that the valuation was below other "indications" or "offers" provided by others, and on that basis deny them. Defendants deny the remaining allegations in Paragraph 131.

132. Defendants deny the allegations in Paragraph 132.

133. Defendants admit that VSP sent a letter dated March 7, 2023, state that the letter speaks for itself, and deny the allegations about the terms of the letter that are contrary to the actual letter. Defendants deny that Total Vision had not received reminders of the expiration date of the 2020 Agreement, including the letter in December 2022. Defendants deny the remaining allegations in Paragraph 133.

134. Defendants deny the allegations of Paragraph 134.

135. Defendants admit that VSP received an emailed letter dated July 20, 2023, from Total Vision's outside counsel, state that the letter speaks for itself and deny the allegations about the terms that are contrary to the actual letter. Defendants deny the remaining allegations in Paragraph 135.

136.   Defendants admit that VSP responded in writing by letter from its outside counsel dated August 2, 2023, state that the letter speaks for itself and deny the allegations about its terms that are contrary to the terms of the actual letter. Defendants deny the remaining allegations in Paragraph 136.

137.   Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations concerning the unidentified "multiple proposals" are referred to in Paragraph 137, and on that basis deny them. Defendants admit that the parties did not reach any agreements to further extend the 2020 Agreement after it expired by its terms in September 2023, and state that the Defendants cooperated in the exit of the practices from the network in or around September 2023.  Defendants deny "conflating" matters. Defendants deny the remaining allegations in Paragraph 137.

138.   Defendants lack knowledge and information sufficient to form a belief as to whether VSP "profited handsomely" under the 2020 Agreement or whether it was "lucrative" for VSP as alleged, and on that basis deny those allegations. Defendants deny the remaining allegations in Paragraph 138.

139.   Defendants deny the allegations in Paragraph 139.

140.   Defendants admit that an affiliated entity to VSP acquired Visionworks.  Defendants lack knowledge and information sufficient to form a belief as to the number of practices that currently are Total Vision practices or its current ownership structure, and on that basis deny those allegations.  To the extent the allegations in Paragraph 149 contain legal conclusions, no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 140.

141.   The allegations in Paragraph 141 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 141.

142.   The allegations in Paragraph 142 contain legal conclusions to which no

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM
No. 8:23-cv-01805-CJC-DFM

response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 142.

143.   The allegations in Paragraph 143 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 143.

144.   The allegations in Paragraph 144 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 144.

145.   The allegations in Paragraph 145 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 145.

146.   The allegations in Paragraph 146 contain legal conclusions to which no response is required. To the extent a response is required, Defendants admit the allegations in Paragraph 146.

147.   The allegations in Paragraph 147 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 147.

148.   To the extent the allegations in Paragraph 148 contain legal conclusions, no response is required. To the extent a response is required, Defendants admit that ophthalmologists, like optometrists, similarly focus on the assessment of eyes, that they can also provide care for other types of eye disease and conditions, and that there are some differences between ophthalmologists and optometrists. Defendants deny the remaining allegations in Paragraph 148.

149.   To the extent the allegations in Paragraph 149 contain legal conclusions, no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 149.

150.   Defendants deny the generalizations that Plaintiffs attempt to make in

Paragraph 150 as incorrect. To the extent the allegations in Paragraph 150 contain legal conclusions, no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 150.

151.   Defendants deny the allegations in Paragraph 151.

152.   Defendants admit that patients can buy glasses and contact lenses on the internet, and that most eye exams and diagnoses should be conducted by trained professionals. To the extent the allegations in Paragraph 152 contain legal conclusions, no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 152.

153.   Defendants admit that optometry practices, like other practices, are subject to California laws, and that VSP's website can provide information to help people find locations in California and other states for eye care. Defendants lack knowledge and information sufficient to form a belief as to the allegations concerning Total Vision's operations, and on that basis deny them. The allegations in Paragraph 153 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations of Paragraph 153.

154.   The allegations in Paragraph 154 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 154.

155.   Defendants admit that vision insurance can cover a patient's costs (sometimes with a copay) for eye exams and optical goods and services, which may include eyeglasses, contact lenses, treatments, and other matters. To the extent the allegations in Paragraph 155 contain legal conclusions, no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 155.

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM
No. 8:23-cv-01805-CJC-DFM

156.   Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 156, and on that basis deny them.

157.   Defendants admit that vision insurance can decrease costs of patients' vision care, as can other options that patients use to pay for glasses and contacts. To the extent the allegations in Paragraph 157 contain legal conclusions, no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 157.

158.   The allegations in Paragraph 158 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 158.

159.   The allegations in Paragraph 159 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 159.

160.   The allegations in Paragraph 160 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 160.

161.   Defendants admit that state regulations concerning vision insurance can vary. To the extent the allegations in Paragraph 161 contain legal conclusions, no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 161.

162.   The allegations in Paragraph 162 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 162.

163.   Defendants admit that some lenses are hard, and that lenses and frames constitute glasses that are worn by consumers to correct vision or for use as sunglasses. Defendants admit that frames are sometimes manufactured and sold separately from the lenses they contain, and by different manufacturers. Defendants deny the remaining allegations in Paragraph 163.

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM
No. 8:23-cv-01805-CJC-DFM

164.   Defendants admit that consumers can chose to correct their vision using glasses or with contact lenses, or both. To the extent the allegations in Paragraph 164 contain legal conclusions, no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 164.

165.   To the extent the allegations in Paragraph 165 contain legal conclusions, no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 165.

166.   The allegations in Paragraph 166 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 166.

167.   The allegations in Paragraph 167 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 167.

168.   Defendants admit that glasses lenses can be hard lenses that are inserted into frames to be worn on the fact by consumers to correct vision or to be used for other purposes, including as sunglasses or safety, and deny the remaining allegations in Paragraph 168.

169.   Defendants admit that both contact lenses and glasses can be worn to correct vision. To the extent the allegations in Paragraph 169 contain legal conclusions, no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 169.

170.   To the extent the allegations in Paragraph 170 contain legal conclusions, no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 170.

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM
No. 8:23-cv-01805-CJC-DFM

171.   The allegations in Paragraph 171 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 171.

172.   The allegations in Paragraph 172 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 172.

173.   Defendants admit that practice management software is software used with computers that helps practices with organizing and record-keeping support, among other things. To the extent the allegations in Paragraph 173 contain legal conclusions, no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 173.

174.   To the extent the allegations in Paragraph 174 contain legal conclusions, no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 174.

175.   To the extent the allegations in Paragraph 175 contain legal conclusions, no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 175.

176.   The allegations in Paragraph 176 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 176.

177.   Defendants state that the Court dismissed Plaintiffs' purported tying claims. The allegations in Paragraph 177 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 177.

178.   Defendants state that the Court dismissed Plaintiffs' purported tying

claims. The allegations in Paragraph 178 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 178.

179.   Defendants state that the Court dismissed Plaintiffs' purported tying claims. The allegations in Paragraph 179 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 179.

180.   Defendants state that the Court dismissed Plaintiffs' purported tying claims. The allegations in Paragraph 180 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 180.

181.   Defendants state that the Court dismissed Plaintiffs' purported tying claims. The allegations in Paragraph 181 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 181.

182.   Defendants state that the Court dismissed Plaintiffs' purported tying claims. The allegations in Paragraph 182 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 182.

183.   Defendants admit that laws have been enacted in Nevada and Texas, which speak for themselves, and deny any allegations about the terms of those laws that are inconsistent with the terms of the laws themselves. Defendants admit that one of the laws in Texas was recently enjoined by a court in Texas.  Defendants deny the remaining allegations in Paragraph 183.

184.   Defendants admit that a proposed Act entitled the Dental and Optometric Care (DOC) Access Act was reintroduced in the Senate on May 3, 2023, admits that VSP has engaged in lobbying activities and opposed passage of certain aspects of the Act, state that the Act has not been passed, and deny the remaining

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM
No. 8:23-cv-01805-CJC-DFM

allegations in Paragraph 184.

185.   Defendants state that the 2020 Agreement expired and that Total Vision notified VSP to remove its providers from the VSP network prior to the expiration date. Defendants deny the remaining allegations in Paragraph 185.

186.   Defendants deny the allegations in Paragraph 186

187.   To the extent the allegations in Paragraph 187 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny that Total Vision practices are "independent," and state they are private-equity backed. Defendants deny the remaining allegations in Paragraph 187.

188.   To the extent the allegations in Paragraph 188 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny the remaining allegations in Paragraph 188.

189.   Defendants deny the allegations in Paragraph 189.

190.   Defendants admit that the number of locations a single optometry practice owned by one or more optometrists can have is limited under California law, admit that optometrists may pool their nonclinical assets in ways that may not violate that law, and deny the remaining allegations in Paragraph 190.

191.   The allegations in Paragraph 191 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 191.

192.   The allegations in Paragraph 192 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 192.

193.   The allegations in Paragraph 193 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 193.

194.   The allegations in Paragraph 194 contain legal conclusions to which no

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM
No. 8:23-cv-01805-CJC-DFM

response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 194.

195.   The allegations in Paragraph 195 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 195.

196.   Defendants state that the Court dismissed Plaintiffs' purported tying claims. The allegations in Paragraph 196 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 196.

197.   The allegations in paragraph 197 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations concerning Total Visions profit margins and percentage of patients with VSP insurance, and on that basis deny them. Defendants deny the remaining allegations in Paragraph 197.

198.   The allegations in paragraph 198 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 198.

199.   The allegations in Paragraph 199, including Paragraphs 199a through 199h, contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 199, including Paragraphs 199a through 199h.

200.   The allegations in paragraph 200 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 200.

201.   The allegations in paragraph 201 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 201.

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM
No. 8:23-cv-01805-CJC-DFM

202.   Defendants state that the Court dismissed Plaintiffs' purported tying claims. The allegations in paragraph 202 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 202.

203.   Defendants admit that it is engaged in interstate commerce. Defendants deny the remaining allegations in Paragraph 203.

204.   Defendants admit that VSP provides reimbursement under its insurance policies for a significant amount of optometry goods that are produced in states other than California, including Marchon goods, and that Marchon has its headquarters in New York.  Defendants lack information sufficient to form a belief as to the truth of the allegations that Total Vision practices sell a significant amount of optometry goods that are produced in other states. Defendants deny the remaining allegations in Paragraph 204.

## **FIRST CAUSE OF ACTION**

### **(Unfair Competition – Cal. Bus. & Prof. Code § 17200 et seq.)**

### **(Total Vision, P.C. Against All Defendants)**

205.   Defendants repeat and reallege each and every Answer contained in the foregoing paragraphs as if fully restated herein.

206.   The allegations in paragraph 206 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 206.

207.   The allegations in paragraph 207 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 207.

208.   The allegations in paragraph 208 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 208.

209.   The allegations in paragraph 209 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 209.

210.   Defendants admit that Total Vision, P.C. is seeking injunctive relief but deny that such relief is warranted or proper. Defendants deny the remaining allegations in Paragraph 210.

## SECOND CAUSE OF ACTION

### (Monopolization – Sherman Act, 15 U.S.C. §§ 2, 15)

### (Total Vision, P.C. Against VSP)

211.   Defendants repeat and reallege each and every Answer contained in the foregoing paragraphs as if fully restated herein.

212.   The allegations in paragraph 212 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 212.

213.   The allegations in paragraph 213 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 213.

214.   The allegations in paragraph 214 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 214.

215.   The allegations in paragraph 215 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 215.

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD CAUSE OF ACTION**

**(Attempted Monopolization – Sherman Act, 15 U.S.C. §§ 2, 15)**

**(Total Vision, P.C. Against VSP)**

216.   Defendants repeat and reallege each and every Answer contained in the foregoing paragraphs as if fully restated herein.

217.   The allegations in paragraph 217 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 217.

218.   The allegations in paragraph 218 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 218.

219.   The allegations in paragraph 219 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 219.

220.   The allegations in paragraph 220 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 220.

221.   The allegations in paragraph 221 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 221.

**FOURTH CAUSE OF ACTION**

**(Tying – Sherman Act, 15 U.S.C. §§ 1, 2, 15 – Per Se Illegal)**

**(Total Vision, P.C. Against VSP)**

222.   Defendants state that this Fourth Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, Defendants repeat and reallege each and every Answer contained in the foregoing paragraphs as if fully restated herein.

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM
No. 8:23-cv-01805-CJC-DFM

223.   Defendants state that this Fourth Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, the allegations of Paragraph 223 are denied.

224.   Defendants state that this Fourth Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, the allegations of Paragraph 224 are denied.

225.   Defendants state that this Fourth Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, the allegations of Paragraph 225 are denied.

226.   Defendants state that this Fourth Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, the allegations of Paragraph 226 are denied.

## **FIFTH CAUSE OF ACTION**

### **(Tying – Rule of Reason – Sherman Act, 15 U.S.C. §§ 1, 2, 15)**

### **(Total Vision, P.C. Against VSP)**

227.   Defendants state that this Fifth Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, Defendants repeat and reallege each and every Answer contained in the foregoing paragraphs as if fully restated herein.

228.   Defendants state that this Fifth Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, the allegations of Paragraph 228 are denied.

229.   Defendants state that this Fifth Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, the allegations of Paragraph 229 are denied.

230.   Defendants state that this Fifth Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, the

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM
No. 8:23-cv-01805-CJC-DFM

1    allegations of Paragraph 230 are denied

2    231.    Defendants state that this Fifth Cause of Action has been dismissed by

3    the Court and no longer requires a response. To the extent a response is required, the

4    allegations of Paragraph 231 are denied.

5    232.    Defendants state that this Fifth Cause of Action has been dismissed by

6    the Court and no longer requires a response. To the extent a response is required, the

7    allegations of Paragraph 232 are denied.

8

9    **SIXTH CAUSE OF ACTION**

10    **(Tying – Cal. Bus. & Prof. Code § 16720 et seq.)**

11    **(Total Vision, P.C. Against VSP)**

12    233.    Defendants state that this Sixth Cause of Action has been dismissed by

13    the Court and no longer requires a response. To the extent a response is required,

14    Defendants repeat and reallege each and every Answer contained in the foregoing

15    paragraphs as if fully restated herein.

16    234.    Defendants state that this Sixth Cause of Action has been dismissed by

17    the Court and no longer requires a response. To the extent a response is required, the

18    allegations of Paragraph 234 are denied.

19    235.    Defendants state that this Sixth Cause of Action has been dismissed by

20    the Court and no longer requires a response. To the extent a response is required, the

21    allegations of Paragraph 235 are denied.

22    236.    Defendants state that this Sixth Cause of Action has been dismissed by

23    the Court and no longer requires a response. To the extent a response is required, the

24    allegations of Paragraph 236 are denied.

25    237.    Defendants state that this Sixth Cause of Action has been dismissed by

26    the Court and no longer requires a response. To the extent a response is required, the

27    allegations of Paragraph 237 are denied.

28

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM
No. 8:23-cv-01805-CJC-DFM

1

## SEVENTH CAUSE OF ACTION

2

### (Monopolization – Refusal to Deal – Sherman Act, 15 U.S.C. §§ 2, 15)

3

### (Plaintiffs Against VSP)

4    238.   Defendants repeat and reallege each and every Answer in the foregoing

5    paragraphs as if fully restated herein.

6    239.   The allegations in paragraph 239 contain legal conclusions to which no

7    response is required. To the extent a response is required, Defendants deny the

8    allegations in Paragraph 239.

9    240.   The allegations in paragraph 240 contain legal conclusions to which no

10   response is required. To the extent a response is required Defendants deny the

11   allegations in Paragraph 240.

12   241.   The allegations in paragraph 241 contain legal conclusions to which no

13   response is required. To the extent a response is required, Defendants deny the

14   allegations in Paragraph 241.

15   242.   To the extent, the allegations in paragraph 242 contain legal

16   conclusions, no response is required. To the extent a response is required,

17   Defendants deny those allegations. Defendants admit that VSP has chosen to no

18   longer do business with Plaintiffs after the parties' 2020 Agreement expired, as it

19   has a right to do. Defendants deny the remaining allegations in Paragraph 242.

20   243.   To the extent, the allegations in paragraph 243 contain legal

21   conclusions, no response is required. To the extent a response is required,

22   Defendants deny the allegations in Paragraph 243.

23   244.   The allegations in paragraph 244 contain legal conclusions to which no

24   response is required. To the extent a response is required, Defendants deny the

25   allegations in Paragraph 244.

26

27

28

## EIGHTH CAUSE OF ACTION

### (Intentional Interference with Prospective Business Relations)

### (Plaintiffs Against VSP)

245.   Defendants state that this Eight Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, Defendants repeat and reallege each and every Answer to the allegations contained in the foregoing paragraphs as if fully restated herein.

246.   Defendants state that this Eight Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, the allegations of Paragraph 246 are denied.

247.   Defendants state that this Eight Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, the allegations of Paragraph 247 are denied.

248.   Defendants state that this Eight Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, the allegations of Paragraph 248 are denied.

249.   Defendants state that this Eight Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, the allegations of Paragraph 249 are denied.

250.   Defendants state that this Eight Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, the allegations of Paragraph 250 are denied.

251.   Defendants state that this Eight Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, the allegations of Paragraph 251 are denied.

252.   Defendants state that this Eight Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, the allegations of Paragraph 252 are denied.

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM
No. 8:23-cv-01805-CJC-DFM

253.   Defendants state that this Eight Cause of Action has been dismissed by the Court and no longer requires a response. To the extent a response is required, the allegations of Paragraph 253 are denied.

## REQUEST FOR RELIEF AND DEMAND FOR JURY TRIAL

Defendants deny that Plaintiffs are entitled to any of the relief they request or any other relief. Moreover, Defendants deny that Plaintiffs are entitled to a trial by jury on any claim. Defendants request that Plaintiffs' Complaint be dismissed with prejudice, the Court find that Plaintiffs are not entitled to any judgment or relief, the Court enter judgment in favor of Defendants, and that the Court award Defendants their attorneys' fees, costs, and expenses, and such other and further relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

Subject to their responses to Paragraphs 1 through 253 of the Complaint above, upon information and belief, and without assuming any burden that they would not otherwise bear, Defendants assert the following defenses and affirmative defenses to Plaintiffs' claims. Defendants reserve the right to add any and all additional affirmative defenses as they become known, including through subsequent discovery.

### FIRST AFFIRMATIVE DEFENSE

1.      Plaintiffs' Complaint and each cause of action contained therein fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

2.      Plaintiffs' claims are limited or barred, in whole or in part, by the doctrines of settlement and release under the 2020 Agreement.

3.      In exchange for allowing Plaintiffs an additional three-year period in the VSP network so as to allow them to prepare to and exit the VSP doctor network,

and other benefits enjoyed by Plaintiffs during the life of the 2020 Agreement, Plaintiffs agreed in the 2020 Agreement not to pursue the alleged claims set forth in the Complaint.

### THIRD AFFIRMATIVE DEFENSE

4.     Plaintiffs' claims are barred or limited, in whole or in part, by the doctrine of accord and satisfaction based on the 2020 Agreement.

5.     In exchange for allowing Plaintiffs an additional three-year period in the VSP network so as to allow them to prepare to and exit the VSP doctor network, and other benefits enjoyed by Plaintiffs during the life of the 2020 Agreement, Plaintiffs agreed in the 2020 Agreement not to pursue the alleged claims set forth in the Complaint.

### FOURTH AFFIRMATIVE DEFENSE

6.     Plaintiffs' claims are limited or barred, in whole or in part, by the applicable statute(s) of limitations.

### FIFTH AFFIRMATIVE DEFENSE

7.     Plaintiffs' claims are limited or barred, in whole or in part, because one or more of the Plaintiffs lack standing to sue.

### SIXTH AFFIRMATIVE DEFENSE

8.     Plaintiffs' claims are limited or barred, in whole or in part, by the equitable doctrines of laches, waiver, and/or estoppel.

9.     In exchange for allowing Plaintiffs an additional three-year period in the VSP network so as to allow them to prepare to and exit the VSP doctor network, and other benefits enjoyed by Plaintiffs during the life of the 2020 Agreement, Plaintiffs chose to enter the 2020 Agreement with the terms now challenged in this litigation.

### SEVENTH AFFIRMATIVE DEFENSE

10.     Plaintiffs' claims are limited or barred, in whole or in part, due to their failure to mitigate their injuries and damages, if any.

1       11.    As part of the 2020 Agreement, Defendants and Plaintiffs agreed to a

2   three-year period so as to allow Plaintiffs to prepare to and exit the VSP doctor

3   network.

4                       **EIGHTH AFFIRMATIVE DEFENSE**

5       12.    The injuries and damages alleged by Plaintiffs do not constitute legally

6   cognizable antitrust injuries.

7                       **NINTH AFFIRMATIVE DEFENSE**

8       13.    The relief sought by Plaintiffs is limited or barred, in whole or in part,

9   because the alleged damages sought are too speculative and uncertain.

10                      **TENTH AFFIRMATIVE DEFENSE**

11      14.    Plaintiffs' claims are limited or barred, in whole or in part, because the

12  conduct alleged did not cause any harm or injury to consumers or competition.

13                    **ELEVENTH AFFIRMATIVE DEFENSE**

14      15.    Plaintiff's claims are limited or barred, in whole or in part, because the

15  conduct alleged was lawful, justified, and pro-competitive, constituted bona fide

16  business practices, and was carried out in furtherance of Defendants' independent

17  and legitimate business interests.

18      16.    Given its focus on advancing the interests of independently owned,

19  private practice of optometry, where practicable, VSP has sought to limit its network

20  relationships with optometry practices owned by corporate entities or private equity

21  firms wherein the practicing optometrist did not control the retail element of his or

22  her practice.

23      17.    Plaintiffs' claims fail because VSP's challenged conduct presents a

24  legitimate business justification.

25                    **TWELTH AFFIRMATIVE DEFENSE**

26      18.    Plaintiffs' claims are limited or barred, in whole or in part, because

27  none of the conduct alleged substantially lessened competition within any properly

28  defined market.

19.    Plaintiffs fail to adequately plead relevant product and geographic markets—a necessary component of their antitrust claims. Thus, Plaintiffs' claims are barred.

## THIRTEENTH AFFIRMATIVE DEFENSE

20.    Plaintiffs' claims are limited or barred, in whole or in part, by the First Amendment and Noerr-Pennington Doctrine.

21.    To the extent Plaintiffs allege that VSP violated the antitrust laws by engaging in any lobbying activity with respect to certain laws enacted in Nevada and Texas or the Dental and Optometric Care Access Act reintroduced in the Senate in May 2023, Plaintiffs' claims are barred by the First Amendment and the Noerr-Pennington doctrine.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## **COUNTERCLAIMS**

As and for its Counterclaim, Counterclaim Plaintiff Vision Service Plan ("VSP") alleges as follows:

### **THE PARTIES**

1.      Counterclaim Plaintiff VSP is a California corporation with its principal place of business in Rancho Cordova, California.

2.      VSP's historical mission has been to support the interests of independent optometrists by making vision care more affordable and accessible to the public.

3.      On information and belief, Total Vision, P.C. is a California professional corporation with its principal place of business in San Diego, California.

4.      On information and belief, Total Vision, LLC is a Delaware limited liability corporation with its principal place of business in Irvine, California.

5.      Total Vision, LLC is a wholly-owned subsidiary of Total Vision Interco, LLC ("Interco").

6.      On information and belief, Interco is a Delaware limited liability company with its principal place of business in Mission Viejo, California.

### **JURISDICTION AND VENUE**

7.      This Court has supplemental jurisdiction over the subject matter of VSP's counterclaims pursuant to 28 U.S.C. § 1367(a).

8.      Total Vision, LLC and Total Vision, P.C. (collectively, "Total Vision") are subject to personal jurisdiction in this district because they have principal places of business in California and have purposefully availed themselves of the benefits and protections of this jurisdiction, including by filing their complaint against VSP in this judicial district.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to VSP's counterclaims arose in this judicial district when Total Vision breached their contract obligations under the 2020 Agreement.

## FACTS

10.     VSP and Total Vision entered into a 2019 Agreement with an effective date of May 22, 2019.

11.     A true and correct copy of the 2019 Agreement is attached as Exhibit A to the Affidavit of Lisa Fields, ECF No. 14-2 at Page ID #:138-161 (hereinafter, the "2019 Agreement").

12.     The 2019 Agreement did not guarantee Total Vision access to VSP's network from year-to-year. The 2019 Agreement contained a one-year term that would continue for successive one-year terms unless either party gave notice of nonrenewal prior to expiration of any term.

13.     Given its focus on advancing the interests of independently owned, private practice of optometry, where practicable, VSP has sought to limit its network relationships with optometry practices owned by corporate entities or private equity firms wherein the practicing optometrist did not control the retail element of his or her practice.

14.     During the initial term of the 2019 Agreement, VSP expressed concerns to Total Vision about private equity ownership of Total Vision, including the tendency of private equity to sell or "flip" its ownership stake within a few years.

15.     One or more private equity companies have ownership interests in Total Vision.

16.     On information and belief, Interco is owned in substantial part by Bregal Investments, Inc. ("Bregal Investments") and/or Bregal Private Equity Partners ("BPEP") (collectively "Bregal").

17.     Bregal Investments and BPEP are private equity firms with offices located in New York, New York.

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM
No. 8:23-cv-01805-CJC-DFM

18.     On information and belief, the owners of the optometry practices that Total Vision acquired were paid in part with an equity interest in Interco.

19.     On information and belief, Total Vision represented to some of the owners of the optometry practices that it acquired, or sought to acquire, that Bregal intended to sell the Total Vision business within 3 to 5 years.

20.     On information and belief, Total Vision also represented to some of the owners of the optometry practices that it acquired, or sought to acquire, that their ownership stakes in Interco could multiply in value by 3 to 5 times or more based on comparable private equity transactions.

21.     As permitted under the terms of the 2019 Agreement, VSP provided Total Vision with a timely notice of nonrenewal—more than ninety (90) days before the end of the one-year term.

22.     Pursuant to VSP's notice of nonrenewal, the 2019 Agreement would have expired in 2020.

23.     Thereafter, VSP and Total Vision negotiated the terms of a new agreement for more than two months during the spring and summer of 2020.

24.     VSP and Total Vision were each represented by their own attorneys during the negotiations of a new agreement in 2020.

25.     During the negotiations in 2020, representatives of Total Vision represented their belief that VSP's actions were implicating antitrust laws and indicated they may sue VSP for those alleged violations. VSP, however, continued to negotiate a new agreement with Total Vision.

26.     During the negotiations in 2020, Total Vision objected to some of the contract terms proposed by VSP.

27.     Similarly, during the negotiations in 2020, VSP objected to some of the contract terms proposed by Total Vision.

28.     Total Vision and VSP made several compromises during their negotiations of a new agreement such that neither side got all of the terms they had asked for during their negotiations.

29.     VSP and Total Vision, LLC entered into a written agreement with an effective date of September 29, 2020 (the "2020 Agreement").

30.     A true and correct copy of the 2020 Agreement is attached as Exhibit B to the Affidavit of Lisa Fields, ECF No. 14-3 at Page ID #:163-197.

31.     Section 7.1 of the 2020 Agreement states: "The term of this Agreement shall begin on the Effective Date and continue for a period of three (3) years."

32.     As part of the 2020 Agreement, Total Vision agreed to settle and release its claims, including its alleged antitrust claims, against VSP and VSP's affiliated entities, in exchange for a three-year contract term that would allow Total Vision to more gradually transition to an out of network status.

33.     As part of the 2020 Agreement, Total Vision also promised not to sue VSP or VSP's affiliates when the 2020 Agreement expired.

34.     Total Vision enjoyed the benefits of and profited from the 2020 Agreement during the entire 3-year term of that Agreement.

35.     In or around October 2022, prior to the expiration of the 2020 Agreement, a third-party broker – Hunter Puckett with the HPC Puckett Advisory Company – contacted VSP for the purpose of soliciting an offer from VSP to purchase Total Vision, including Total Vision, LLC, Total Vision, P.C., and Interco.

36.     In February 2023, VSP provided Total Vision's broker with a nonbinding offer to purchase it, but Total Vision rejected that offer.

37.     Total Vision declined to provide VSP with any counteroffer.

38.     On or about March 7, 2023, VSP reminded Total Vision that the 2020 Agreement would expire by its terms on September 29, 2023.

39.    On or about March 7, 2023, VSP also expressed to Total Vision that VSP would not renew the 2020 Agreement.

40.    Prior to the expiration of the 3-year term of the 2020 Agreement, Total Vision's counsel threatened to sue VSP if VSP would not continue the 2020 Agreement beyond the 3-year term described in the agreement.

41.    VSP refused to accede to Total Vision's threat to sue.

42.    On September 26, 2023, Total Vision, LLC and Total Vision, P.C. commenced this action against VSP and its affiliates. (*See* Compl., ECF. No. 1.)

43.    The 2020 Agreement expired on September 29, 2023.

44.    Section 7.3 of the 2020 Agreement states:

> **Effect of Termination.** On the third anniversary of the Effective Date, [VSP] will remove from the VSP Doctor Network all locations deemed included in <u>Schedule 2.1</u>, and those Providers will no longer be eligible under this Agreement to be VSP Doctors. [. . . ]

45.    Section 7.3.4 of the 2020 Agreement states: "Each Party shall remain liable for all provisions of the Agreement that survive termination as outlined in <u>Section 7.7</u>." Section 7.7 of the 2020 Agreement lists provisions that would survive expiration or termination, including Section. 7.10.

46.    The 2020 Agreement's obligations set forth in section 7.10, titled Mutual Release and Covenant Not to Sue, apply to Total Vision, LLC.

47.    The 2020 Agreement's obligations set forth in section 7.10, titled Mutual Release and Covenant Not to Sue, also apply to Total Vision, P.C. because it is an affiliate of Total Vision, LLC.

48.    Section 7.10.1 of the 2020 Agreement states:

> A goal of this agreement is to enable [Total Vision] to continue growing its business as it and its affiliated providers, optometry practices and locations prepare to and exit the VSP doctor

network. [Total Vision] acknowledges that there are and, to the best of its knowledge and belief, will be enough VSP doctors to provide covered services to members, both during and after the term of this agreement. It is also a goal of this agreement for this exit to occur without the threat of litigation by a party without exempting either party from liability to unaffiliated third parties. To these ends, the parties have agreed to the following mutual release and covenant not to sue.

49.     Pursuant to section 7.10's Mutual Release and Covenant Not to Sue provision under the 2020 Agreement, Total Vision, LLC mutually agreed on its own behalf and on behalf of its affiliated entities, including Total Vision, P.C., to settle and release any and all causes of action and claims against VSP and its affiliates, including Defendants VSP Ventures Management Services, LLC, Altair Eyewear, Inc., Marchon Eyewear, Inc., Eyefinity, Inc., and VSP Labs, Inc.

50.     Section 7.10.2 of the 2020 Agreement states:

**Mutual release.** The Parties, for themselves and their respective parent companies, subsidiaries, affiliated entities, predecessors, successors, assigns, officers, directors, shareholders, members, employees, attorneys and agents ("Releasing Parties"), release one another and the other's their respective parent companies, subsidiaries, affiliated entities, predecessors, successors, assigns, officers, directors, shareholders, members, employees, attorneys and agents ("Released Parties"), from any and all causes of action and claims for relief, known or unknown, which the releasing parties presently have against the Released Parties, [. . .] .

51.     Section 7.10.3 of the 2020 Agreement states:

**Mutual Covenant Not to Sue.** Except as permitted by section 2.1 of this Agreement, neither Party will directly, or indirectly

48

through an Affiliate, Optometry Practice or Provider, commence any proceeding against the other Party during or after the term of this Agreement arising from or relating to the denial of an application to become a VSP Doctor or removal of a VSP Doctor from the VSP Doctor Network as a result of their affiliating with or entering into an acquisition or other transaction with [Total Vision] or a Provider or on the basis that the applicant or the VSP Doctor does not have ownership and control of any or all aspects of their practice including dispensary.. The Parties acknowledge that, except as permitted by section 2.1 of this Agreement, the Providers and their respective Optometry Practices and Locations are not eligible to be in the VSP Doctor Network or VSP Doctors.

52. Section 7.10.4 of the 2020 Agreement states:

Should either Party commence any action against the other Party that breaches this 7.10, and such action is dismissed on its merits in whole or in part on the basis that the action was settled or barred by this section 7.10, the Party that breached this section 7.10 shall pay all legal fees and costs incurred by the other Party in the action.

53. Total Vision, LLC directly, and indirectly through Total Vision, P.C., commenced this action against VSP and its affiliates asserting claims that Total Vision had released and covenanted not to sue, breaching section 7.10 of the 2020 Agreement and breaching the contractual duty of good faith and fair dealing.

54. Due to Total Vision's breach of section 7.10 of the 2020 Agreement, VSP has suffered damages.

## COUNT I – BREACH OF CONTRACT AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### (TOTAL VISION, LLC)

55.     VSP repeats and realleges each and every allegation contained in the foregoing paragraphs of its counterclaim, and each of its Answers to the Complaint above, as if fully restated herein.

56.     VSP and Total Vision, LLC are parties to the 2020 Agreement.

57.     Total Vision, LLC materially breached the 2020 Agreement by directly, and indirectly through its affiliate Total Vision, P.C., commencing this action against VSP and VSP's affiliates.

58.     Total Vision, LLC breached its contractual duty of good faith and fair dealing by directly and indirectly through its affiliate Total Vision, P.C., commencing this action against VSP and VSP's affiliates.

59.     As a result of Total Vision, LLC's breach of the 2020 Agreement, VSP has been damaged in an amount to be determined at trial.

## COUNT II – BREACH OF CONTRACT AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### (TOTAL VISION, P.C.)

60.     VSP repeats and realleges each and every allegation contained in the foregoing paragraphs of its counterclaim as if fully restated herein.

61.     VSP and Total Vision, LLC are parties to the 2020 Agreement.

62.     Because Total Vision, P.C. is an affiliate of Total Vision, LLC, Total Vision, P.C. is bound by the contractual obligations set forth in section 7.10 of the 2020 Agreement.

63.     Total Vision, P.C. materially breached the 2020 Agreement by directly, and indirectly as Total Vision, LLC.'s affiliate, commencing this action against VSP and VSP's affiliates.

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM
No. 8:23-cv-01805-CJC-DFM

64.   Total Vision, P.C. breached its contractual duty of good faith and fair dealing by directly, and indirectly as Total Vision, LLC.'s affiliate, commencing this action against VSP and VSP's affiliates.

65.   As a result of Total Vision, P.C.'s breach of the 2020 Agreement, VSP has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Defendants and Counterclaim Plaintiff VSP demands judgment in its favor against Total Vision, LLC and Total Vision P.C. for the following relief:

(A)   Dismissal of all claims asserted in the Complaint with prejudice;

(B)   On Counterclaim Plaintiff's Counterclaim, an award of damages in an amount to be determined at trial;

(C)   An award of the attorneys' fees and costs incurred in this action; and

(D)   Any further relief that the Court determines is just and proper.


Dated:  March 26, 2024


By: /s/ Laura A. Brenner
    _____
    Scott W. Hansen (*Pro Hac Vice*)
      <shansen@reinhartlaw.com>
    Laura A. Brenner (*Pro Hac Vice*)
      <lbrenner@reinhartlaw.com>
    Olivia J. Brooks (*Pro Hac Vice*)
      <obrooks@reinhartlaw.com>
    REINHART BOERNER VAN DEUREN s.c.
    1000 North Water Street, Suite 1700
    Milwaukee, WI  53202
    Telephone:     (414) 298-8383
    Facsimile:     (414) 298-8097

    Theodore W. Chandler (Bar No. 219456)
      <ted.chandler@bakerbotts.com>
    BAKER BOTTS L.L.P.
    1801 Century Park East, Suite 2400
    Los Angeles, California 90067
    Telephone:     (213) 202-5702
    Facsimile:     (213) 202-5732

51

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cheryl A. Cauley (Bar No. 252262)
  <cheryl.cauley@bakerbotts.com>
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304
Telephone:      (650) 739-7500
Facsimile:      (650) 739-7699

James G. Kress (*Pro Hac Vice*)
  <james.kress@bakerbotts.com>
Paul C. Cuomo (*Pro Hac Vice*)
  <paul.cuomo@bakerbotts.com>
Jana I. Seidl (*Pro Hac Vice*)
  <jana.seidl@bakerbotts.com>
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, DC 20001
Telephone:      (202) 639-7700
Facsimile:      (202) 639-7890

*Attorneys for Defendants Vision Service Plan, a/k/a VSP Global, VSP Ventures Management Services, LLC, Altair Eyewear, Inc., Eyefinity, Inc., Marchon Eyewear, Inc., and VSP Labs, Inc.*

DEFENDANTS' ANSWER AND VSP'S COUNTERCLAIM
No. 8:23-cv-01805-CJC-DFM